IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 5:11-01567-JKG |
| HARTFORD CASUALTY INSURANCE COMPANY, | : |
| Defendant. | : |

# ORDER

**AND NOW,** this ___ day of _____, 2012, upon consideration of Hartford Casualty Insurance Company's Motion for Summary Judgment on Counts I, II, and III of Plaintiff's First Amended Complaint and any response thereto, it is hereby **ORDERED** that:

1. Hartford's Policy of Insurance No. 12 SBA BH6001 DW did not afford coverage for Plaintiff's March 4, 2009 loss;

2. Hartford's Policy of Insurance No. 12 SBA BH6001 DW did not afford coverage for Plaintiff's July 7, 2009 loss;

3. Count Nos. II and III of Plaintiff's First Amended Complaint are dismissed.

BY THE COURT:

_____
J.

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>  Plaintiff,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>  Defendant. | :<br>:<br>:<br>:  CIVIL ACTION NO. 5:11-01567-JKG<br>:<br>:<br>:<br>:<br>:<br>: |

### DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby moves for summary judgment and in support thereof incorporates herein its Brief in Support thereof as if set forth at length.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

s/Thomas S. Coleman
RICHARD D. GABLE, JR., ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA  19103
Telephone:   (215) 405-9191
Facsimile:    (215) 405-9190
*Attorneys for Defendant, Hartford Casualty Insurance Company*

Dated: July 24, 2012

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> HARTFORD CASUALTY INSURANCE : <br> COMPANY, : <br> : <br> Defendant. : | CIVIL ACTION NO. 5:11-01567-JKG |

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby presents the following Brief in Support of its Motion For Summary Judgment.

**I.     Introduction**

This is a first-party insurance coverage case instituted by Plaintiff, the policyholder against Hartford, its insurance company for coverage under a policy of commercial property insurance. In that regard, in March of 2009 Hartford insured Plaintiff's large commercial building in Allentown, Pennsylvania, which suffered a sprinkler leak and resulting water damage. Plaintiff made claim under the policy to Hartford for that damage.

Hartford thoroughly investigated Plaintiff's claim and learned that: 1) the sprinkler leak had occurred on the vacant, unheated third floor of the building; 2) the building in its entirety was considered "vacant" as defined by Hartford's policy because it was not at least 31% rented, and 3) Plaintiff had not protected the building's sprinkler

system against freezing, as it was required to do for coverage to apply under the Policy's Vacancy Condition.  Accordingly, Hartford's Policy did not insure that loss and Plaintiff's claim was denied.[1]

Hartford's Statement of Undisputed Material Facts confirms the accuracy of the factual determinations made by Hartford during its investigation.  Application of those undisputed material facts to the Policy's express and unambiguous Vacancy Condition compels a ruling in Hartford's favor as a matter of law.   Accordingly, for the reasons set forth below Hartford respectfully requests that this Court grant it summary judgment on all counts of Plaintiff's Complaint.

## II.     Background

Plaintiff is a single-purpose entity whose sole function is to lease and maintain a large commercial property located at 602-618 North 7th Street, Allentown, Pennsylvania (the "Building").  Hartford Statement of Undisputed Facts ("HSUF") ¶ 13.  The Building consists of four stories, each with 22,000 sq/ft of rentable space.  Id. at ¶ 15.  Although the Building had once housed, inter alia, a garment manufacturer and a thrift store, as of 2009 its only remaining tenant was a Rite-Aid pharmacy, which leased 14,000 sq/ft on the first floor.  Id. at ¶ 17-21.  The remainder of the Building was vacant.[2]  Id.

Hartford insured the Building under Policy No. 12 SBA BH6001 DW (the "Policy") with effective dates December 29, 2008 through December 29, 2009.  HSUF at ¶ 1.  In the early morning hours of  March 4, 2009, the sprinkler system located on the third

---

[1] Four months later, Plaintiff filed a second claim for water damage resulting from theft and/or vandalism at the building, which was also denied by Hartford pursuant to the Policy's same Vacancy Condition, as discussed further below.

[2] Indeed, since as early as 1999 instead of fixing the health and safety violations the City of Allentown had cited it for, Plaintiff had been contemplating abandoning and sealing off the second and third floors of the Building.  HSUF ¶ 22.

2

floor of the Building leaked, causing water to infiltrate the Building (the "First Loss"). Plaintiff's First Amended Complaint ¶ 11.

Plaintiff filed a claim with Hartford for benefits under the Policy as a result of the Loss (the "First Claim").  Plaintiff's First Amended Complaint ¶ 17. Hartford investigated the claim and found the Building was vacant as defined by the Policy and that Plaintiff had neglected to protect the Building's sprinkler system from freezing.  HSUF ¶ 4.  For these reasons, which are discussed in more detail below, Plaintiff's claim was denied.

About four months later, the Building suffered further water damage when domestic copper water pipes were stolen and/or vandalized therein (the "Second Loss"). HSUF ¶¶ 5-7.  Plaintiff filed yet another claim with Hartford under the Policy as a result of that loss (the "Second Claim").  Hartford again investigated and found that the Building remained vacant and that the loss was caused by theft and/or vandalism.  Id. Accordingly, Hartford denied that claim based on the Policy's Vacancy Condition, which excluded coverage for theft, vandalism and water damage if the Building was vacant. Id.  Shortly after the Second Loss, the City of Allentown's building inspectors deemed the Building unfit for human habitation and condemned it.  HSUF ¶ 8.

Plaintiff filed its First Amended Complaint against Hartford on or about June 3, 2011.  Hartford filed its Answer and Affirmative Defenses on July 20, 2011, asserting inter alia, the Vacancy Condition as a complete defense to Plaintiff's claims.[3]  Discovery has unequivocally revealed that the Building suffered longstanding problems with, inter alia, water infiltration through its roof.  HSUF ¶ 41.  Further, Hartford learned that the City of Allentown's building inspectors had been monitoring this Building because of

---

[3] Hartford also asserted the Policy's cooperation clause as a defense because Plaintiff refused and/or neglected to provide the documentation that Hartford was requesting concerning how the Building had been heated.  See Hartford's Answer and Affirmative Defenses 4th Affirmative Defense.

3

prior complaints with its condition.  HSUF ¶ 42.  Hartford also learned that although the Building had been condemned by Allentown officials immediately after the Second Loss, that condemnation stemmed largely from longstanding roof problems and Plaintiff's apparent refusal to correct the cited deficiencies.  HSUF ¶ 41.  Finally, Hartford learned that Plaintiff was seeking to close parts of the Building down as early as 1999 and persisted with those efforts after the two losses addressed herein.  HSUF ¶¶ 22 and 42.  Accordingly, sufficient discovery has concluded to make the filing and disposition of this summary judgment motion ripe.[4]

### III.  Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Startzell v. City of Philadelphia, 533 F.3d 183, 192 (3d Cir. 2008). The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; El. v. Southeastern Pennsylvania Transportation Authority, 479 F.3d 232, 237 (3d Cir. 2007).

The movant must set forth the legal elements of its theory and point to specific evidence which supports each element.  Combustion Systems Services, Inc. v. Schuylkill Energy Resources, Inc., 1994 U.S. Dist. LEXIS 7133 (E.D.Pa. May 18, 1994) (Huyett, S.J.); accord Board of Sapphire Bay Condominium West v. Simpson, 2010

---

[4] Due to scheduling difficulties with certain third party entities and people, the parties have agreed to conduct limited further discovery beyond the summary judgment deadline; Hartford would, therefore, respectfully request the right to supplement this Motion in the event that further material evidence is uncovered.

4

U.S.Dist. LEXIS 59817 (D.V.I. June 14, 2010) (Stengl, J.).

In addition, the movant must provide specific citations to the relevant portions of the record.  E.g., Handeen v. Lemaire, 112 F.3d 1339, 1345-1346 (8th Cir. 1997); Lexion Medical, LLC v. Northgate Technologies, Inc., 618 F.Supp.2d 896, 899 (N.D. Ill. 2009); Murray v. Edwards County Sheriff's Department, 453 F.Supp.2d 1280, 1285 (D.Kan. 2006).

The interpretation of the Hartford insurance policy is an issue of law for the Court to decide.  Because this is a diversity action, Pennsylvania substantive law applies in construing the language of the insurance policy.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 81 (1938).  Under Pennsylvania law, "[t]he construction of an insurance policy is a question of law which must be resolved by the courts." Hunyady v. Aetna Life & Cas., 578 A.2d 1312, 1313 (Pa. Super. 1990).  Accordingly, when interpreting the insurance contract, "the goal of [the] task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C., 821 F.2d 216, 220 (3d Cir. 1987) (citing Mohn v. American Cas. Co. of Reading, 326 A.2d 346 (Pa. 1974)).  If the language is clear and unambiguous a court is required to give effect to that language.  Pennsylvania Mfrs'. Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co., 233 A.2d 548, 551 (Pa. 1967).

In determining whether a provision in an insurance policy is clear and unambiguous, the test is whether "reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." Celley v. Mutual Benefit Health & Accident Ass'n., 324 A.2d 430, 434 (Pa. Super. 1974).  Thus, "[t]he fact that the parties do not agree upon the proper interpretation does not necessarily

5

render the contract ambiguous." Vogel v. Berkley, 511 A.2d 878, 881 (Pa. Super. 1986).  Additionally, in St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981), the court stated that "[a] court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them."  As a result, "the Court [should] adopt the interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable and natural intention of the parties, bearing in mind the objects manifestly to be accomplished."  Galvin v. Occidental Life Ins. Co. of Cal., 211 A.2d 120, 122 (Pa. Super Ct. 1965).

Finally, it is appropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial when a "reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law."  El v. Southeastern Pennsylvania Transportation Authority, 479 F.3d 232, 237 (3d. Cir. 2007); see National State Bank v. Federal Reserve Bank of NY, 979 F.2d 1579, 1582 (3d. Cir. 1992).

## IV. The Policy's Vacancy Provision

Hartford's Policy limits the coverage provided to buildings that it defines as "vacant."  HSUF ¶ 1.  And the Policy makes explicit what conditions constitute a vacant building, providing that a building will be considered "vacant" unless at least 31% of the entire building is "rented" to and "used" by a lessee or sublessee, or "used by the building owner" to "conduct its customary operations."  Id.  In relevant part the Hartford Policy provides as follows:

    **E.**    **PROPERTY LOSS CONDITIONS**

        *        *        *

    **8.**    **Vacancy**

        **a.**    **Description of Terms**

> **(1)** As used in the Vacancy Condition, the term building and the term vacant have the meanings set forth in paragraphs, **(a)** and **(b)** below:
>
> \*            \*            \*
>
> **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
>> **(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
>>
>> **(ii)** used by the building owner to conduct customary operations.

HSUF ¶ 1 (the "Vacancy Condition").

And if the Building is "vacant," the Vacancy Condition limits the coverage the Policy provides as follows:

> **b.    Vacancy Provisions**
>
> If the building where physical loss or physical damage occurs has been vacant for more than 60 consecutive days before that physical loss or physical damage occurs:
>
>> **(1)** We will not pay for any physical loss or physical damage caused by any of the following even if they are Covered Causes of Loss:

7

|     |     |                                                                            |
| --- | --- | -------------------------------------------------------------------------- |
| **(a)** | Vandalism; |
| **(b)** | Sprinkler leakage, unless you had protected the system against freezing; |
| **(c)** | Building glass breakage; |
| **(d)** | Water damage; |
| **(e)** | Theft; or |
| **(f)** | Attempted theft. |

HSUF ¶ 1.

Accordingly, the Vacancy Condition clearly delineates the circumstances constituting – and consequences of – an insured maintaining a "vacant" building.

**V. Application of the Policy's Vacancy Condition to the Undisputed Material Facts of Both the First and Second Losses Compels a Finding of No Coverage As a Matter of Law**

As set forth in Hartford's Statement of Undisputed Material Facts, when the First Loss occurred the following conditions existed at the Building:  1) the basement, second and third floors were <u>not</u> being rented to tenants (and only a little over half of the first floor was rented), <u>see</u> HSUF at ¶¶ 15-22 ; 2) the basement, second and third floors of the Building lacked heat or other measures to protect the sprinkler system against freezing, <u>see</u> HSUF at ¶ 24; and 3) on March 4, 2009 a sprinkler head leaked, causing physical loss or damage to the Building, <u>see</u> HSUF at ¶ 2.  Given those undisputed facts, the Policy did not insure physical loss or physical damage resulting from the sprinkler leak of March 4, 2009.  Hartford is, therefore, entitled to summary judgment that its Policy excluded all such loss or damage resulting from the First Loss.

Likewise, when the Second Loss occurred:  1) the Property remained vacant; and 2) the loss resulted from "water damage," "theft," and/or "vandalism."  <u>See</u> HSUF ¶¶

5, 15-22.  Given those two undisputed material facts, Hartford's Policy did not insure against any resulting physical loss or damage stemming from the Second Loss.  Hartford is, therefore, entitled to summary declaration that all loss or damage resulting from the Second Loss was also excluded by the Policy.

    A.    The First Loss and Claim

Hartford's Policy deems a building "vacant" unless at least 31% is rented to and used by a tenant or the owner.  See supra § IV.  Here, the undisputed material facts reflect that when the First Loss occurred the Building had but a single tenant, Rite Aid, and that Rite Aid only occupied approximately 15% of the Building's rentable space.  Indeed, Plaintiff's principal, George Diemer, conceded as much at deposition, explaining that the remaining space had not been rented to any tenants in a very long time.  Thus, no genuine dispute of fact exists that when the First Loss occurred the Property was "vacant" as defined by the Policy.

Having determined that the Building was vacant, the second step in the coverage analysis under the Vacancy Condition is to determine if, when the First Loss occurred, Plaintiff had protected the sprinkler system, which everyone agrees leaked, against freezing.  To that end, it is also undisputed that, despite the ability to do so, Plaintiff did not heat the second or third floors of the Building, leaving the wet sprinkler pipes in the 44,000 square feet of vacant space on those two floors susceptible to freezing.  HSUF ¶ 24.  In fact, on at least two prior occasions Plaintiff had been explicitly warned that it needed to maintain heat on the second and third floors of the Building to protect its sprinkler system from freezing.  See HSUF ¶¶ 26-30.  The first such warning came from a prior property insurer, Peerless Insurance, which advised as follows:

> The sprinkler system is a wet pipe type and the upper floors are all non-heated. The heating system should be service inspected and activated for the upper floors and the basement to provide at least a 45-degree interior temperature. *This will prevent the potential for sprinkler freezing, pipe break and resulting water damage.*"

HSUF ¶ 27.

Approximately one (1) year after receiving that explicit warning, Plaintiff suffered a pipe break, which its sprinkler company, Kistler O'Brien, believed was due to pipes freezing. HSUF ¶ 28. As a direct result of that pipe break event, Kistler O'Brien again warned Plaintiff that the Building's unoccupied spaces needed to be heated to protect the system from freezing, advising:

> *NOTE Building heat must be maintained in unoccupied area to prevent future problems.

HSUF ¶ 29.

Exasperated with Plaintiff's complete failure to heed its warnings and take any steps to protect the fire suppression system from freezing and heat the second and third floors, in 2007 Kistler O'Brien advised Plaintiff that it would no longer certify the Building's sprinkler system because the Building was not being properly maintained. HSUF ¶ 31. In particular, Kistler O'Brien advised the Plaintiff's then-property manager, Brian Hannon, that:

> Spoke w/Brian Hannon and explained that we are not continuing w/Inspection. *System has been written up and nothing done. Multiple leaks, unheated areas.* Heads over fifty years old. FDC caps missing. Bldg is a Hazard- no lights – holes in floor.

HSUF ¶ 31. (Emphasis added).

Rather than correct the deficiencies raised by Kistler O'Brien, Plaintiff simply chose to stop conducting annual sprinkler inspections beginning in 2008. Roughly two years after Kistler O'Brien left the site, the sprinkler system failed.

Furthermore, both the applicable municipal codes and standard industry practice require, <u>inter alia</u>, that the interior of buildings be heated to a minimum temperature of 40ºF if wet-sprinkler systems are maintained in a property. For example, Allentown has adopted the International Fire Code and International Building Code, which incorporate NPFA 25 and provide in pertinent part (as it pertains to automatic wet sprinkler systems):

> 5.2.5 Buildings. Annually, prior to the onset of freezing weather, buildings with wet pipe systems shall be inspected to verify that windows, skylights, doors, ventilators, other openings and closures, blind spaces, unused attics, stair towers, roof houses, and low spaces under buildings do not expose water filled sprinkler piping to freezing and to verify that adequate heat [minimum 40°F (4.4°C)] is available.

HSUF ¶ 25.

Not only did Plaintiff fail to maintain temperatures above 40ºF as required, it did not even bother to have the system inspected prior to the winter of 2008-2009 as required by Code, despite the incontrovertible evidence that its sprinkler system was not being protected from freezing.

Likewise, NFPA 13 – Section 8.14.4, which governs the installation of wet sprinklers and deals directly with the "protection of piping against freezing," states that where sprinkler piping cannot be kept above 40°F, a system must be put in place to keep the pipe from freezing, including but not limited to a dry pipe system, listed heat trace system, and/or insulation. HSUF ¶ 25. As can be seen, these industry standards mandate that the interior of such buildings be maintained at or above 40ºF to prevent

11

freeze-ups, unless alternative measures are in place to protect the system from freezing.

Finally, ample case precedent suggests that Plaintiff's failure to heat the second and third floors of the Building, or take alternative precautions to protect a sprinkler system from freezing, constitutes a failure to protect that system. See generally, Saiz v. Charter Oak Fire Ins. Co., 2007 WL 2701398, pp. *6-*8 (D. Colo. 2007) aff'd 299 Fed. Appx. 836 (10th Cir. 2008) (construing a materially similar vacancy provision and concluding that "[p]laintiffs have failed to establish their attempts to protect the system from freezing (the condition precedent allowing for possible coverage"); Reade v. SL Green Operating P'Ship, 30 A.D.3d 189, 817 N.Y.S.2d 230 (2006) (holding landlord liable for negligence after sprinkler pipes froze and burst because, among other things, "the requirements to protect water supply pipes from freezing temperatures ... are part of a comprehensive scheme of regulations designed to promote fire safety and to ensure the integrity of building sprinkler systems for the protection of the general public"); Muller Boat Works, Inc. v. Unnamed 52' Unnamed House Barge, 464 F.Supp.2d 127, 136  (E.D.N.Y. 2006) (finding that damage to boat piping resulted from contractors "failure to protect the pipes from freezing"); Four Winds, LLC v. American Exp. Tax and Consulting Services, Inc. 2006 WL 2699747, *3 (N.D.Ind.2006) (Contractor hired to remove sprinkler heads and drain water from system to "minimize potential freeze damage").

Accordingly, Hartford respectfully suggests that as a matter of law no reasonable jury could conclude that Plaintiff had protected the sprinkler against freezing in light of the following undisputed facts:  1) the second and third floors of the Building were not

heated; 2) Plaintiff had explicit prior warnings regarding, and experience with the consequences of, failing to heat the Building; 3) common industry and municipal standards called for protecting wet-sprinkler systems from freezing by, inter alia, maintaining a minimum temperature in any building area where such systems exist. And if no reasonable jury could conclude the Building's sprinkler system was protected against freezing, as a matter of law the Policy's Vacancy Condition excludes damage caused by water damage and sprinkler leakage. See EI 479 F.3d at 238; National State Bank, 979 F.2d at 1582.

B.  The Second Loss and Claim

It is undisputed that the Second Loss occurred approximately 4 months after the First Loss, on or about July 7, 2009 as a result of copper plumbing pipes having been stolen and/or vandalized. HSUF ¶ 5. It is also undisputed that the Building suffered water damage as a result of that theft/vandalism to the plumbing system. HSUF ¶ 6. And when Hartford inspected the Building after that loss, Rite Aid remained the sole tenant in the Building. HSUF ¶¶ 17-21. Therefore, as a matter of law the Building was "vacant" pursuant to the Vacancy Condition and its limitations on coverage applied. See supra at § **IV**.

And as discussed above, when a building is "vacant" the Policy's Vacancy Condition expressly excludes, inter alia, all coverage for physical loss or damage resulting from "water damage," "theft" or "vandalism." Id. Here, there is no dispute that the Building suffered "water damage" as a result of the alleged theft/vandalism of copper pipes. Simply stated, such damage is expressly excluded by the Vacancy

13

Condition. Accordingly, Hartford respectfully requests that this Court also declare that the Policy did not afford coverage for the Second Claim.

      C.      Plaintiff's Bad Faith Claim Fails as a Matter of Law Because there is not One Scintilla of Evidence of Bad Faith.

To succeed on a claim for bad faith under 42 Pa. C. S. § 8371, Plaintiff must demonstrate that Hartford acted in bad faith by clear and convincing evidence. Terletsky v. Prudential Property & Casualty Insurance Co., 437 Pa. Super. 108, 649 A.2d 680 (1994). Pennsylvania courts have generally held that, to recover under 42 Pa. C. S. § 8371, a plaintiff must demonstrate (1) that the insurer lacked a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis. Id. Courts apply an objective analysis to the reasonableness prong, questioning whether there is any possible reasonable basis for the insurer's conduct and not whether the insurer's conduct was actually motivated by a reasonable purpose. Id. Further, "in order to survive a dispositive motion as to bad faith, a plaintiff must meet the substantial burden of showing by clear and convincing evidence that said elements are met." Easy Sportswear, Inc. v. American Economy Ins. Co., 2007 WL 4190767, *12 (W.D.Pa. Nov. 21, 2007). As a matter of law, if some reasonable basis did exist, that insurer cannot have acted in bad faith under 42 Pa. C. S. §8371. Id. (citing Livornese v. Medical Protective Co., 219 F. Supp. 2d 645, 648 (E.D. Pa. 2002)).

Hartford has, at all relevant times, acted in good faith in the handling of Plaintiff's claim. It promptly responded to the loss, inspected the site and damage, and interviewed pertinent witnesses and requested pertinent documentation. Even if the

14

Plaintiff disagrees with the coverage position taken by Hartford, it cannot seriously be argued that Hartford's coverage position was without a reasonable basis.  The Plaintiff has failed to produce any evidence, which if proven at trial, would constitute bad faith under Pennsylvania law and, accordingly, cannot meet its burden under F.R.C.P. 56; see 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2713.1, at 616 (1983) (Summary judgment is appropriate if the plaintiff has so little evidence on an essential element of his claim that it is clear that a directed verdict would have to be granted at trial).

## VI.    Conclusion and Relief Requested: Hartford is Entitled to Summary Judgment that the Policy Did Not Afford Coverage for Either the First of Second Losses

For the reasons set forth above, Hartford respectfully requests that judgment as a matter of law be granted in its favor that its Policy did not afford coverage for the First or Second Losses and on Plaintiff's statutory bad faith claim.  In support of that argument, Hartford pointed the Court to the Policy's Vacancy Condition, which specifically and expressly advised the Plaintiff of the consequences, i.e., coverage limitations, of the Building not being sufficiently rented.  Plaintiff knew the Building was less than 31% rented yet it did not seek different insurance coverage. The Vacancy Condition is contained in the Policy to mitigate the obvious increased risk exposure (and concomitant cost of the Policy to the insured) posed by insuring vacant buildings.  And despite the prevalence of vacant-building insurance in the marketplace, Plaintiff (which is owned by two highly sophisticated professional real estate developers) opted to purchase a policy containing that condition. Having made that business decision, and

the related one not to heat the entire Building, Plaintiff must now be held to the express terms of its bargain with Hartford.

                                            BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

                                            s/Thomas S. Coleman
                                            RICHARD D. GABLE, JR., ESQ.
                                            rgable@butlerpappas.com
                                            THOMAS S. COLEMAN, ESQ.
                                            tcoleman@butlerpappas.com
                                            1818 Market Street, Suite 2740
                                            Philadelphia, PA  19103
                                            Telephone:   (215) 405-9191
                                            Facsimile:   (215) 405-9190
                                            *Attorneys for Defendant, Hartford Casualty*
Dated: July 24, 2012                     *Insurance Company*

## CERTIFICATE OF SERVICE

I, Thomas S. Coleman, hereby certify that, on this 24th day of July, 2012 a true and correct copy of the foregoing Motion for Summary Judgment and Memorandum of Law in Support thereof has been served on the following counsel of record via the Court's Electronic filing system:

>Marc Kancher, Esquire
>The Kancher Law Firm, LLC
>Grove Professional Center
>100 Grove Street
>Haddonfield, NJ 08033
>*Attorney for the Plaintiff*

>BUTLER PAPPAS WEIHMULLER
>KATZ & CRAIG, LLP

>By:   s/Thomas Coleman
>      Thomas S. Coleman, Esquire
>      1818 Market Street
>      Suite 2740
>      Philadelphia, PA 19103
>      (215) 405-9191
>      *Attorneys for Defendant,*
>      *Hartford Casualty Insurance Company*