IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>    Plaintiff,<br><br>  v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>    Defendant. | :<br>:<br>:<br>: CASE NO. 5:11-cv-01567-JKG<br>:<br>:<br>:<br>: |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT HARTFORD'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby moves for summary judgment and in support thereof states the following undisputed facts:

**I. Background**

1. Hartford insured under Policy No.: 12 SBA BH6001 DW (the "Policy") with effective dates December 29, 2008 through December 23, 2009, a large commercial property owned by Plaintiff located at 602-618 North 7th Street, Allentown, Pennsylvania (the "Building"). A true and correct copy of the pertinent provisions of the Hartford Policy are attached hereto as Exhibit "A".

2. At or about 1:30 AM on March 4, 2009 a sprinkler system located on the vacant third floor of the Building "leaked;" the leak caused water to inundate the Building (the "First Loss"). Plaintiff's First Amended Complaint ¶ 11.

3. Plaintiff filed a claim with Hartford for benefits under the Policy as a result of the Loss (the "First Claim"). Plaintiff's First Amended Complaint ¶ 17.

4. Hartford investigated the First Loss and denied Plaintiff's First Claim because the Building was "vacant" and Plaintiff had neglected to protect the subject sprinkler system against freezing in accordance with the terms of its Policy's vacancy clause. Attached hereto as Exhibit "B" is a true and correct copy of Hartford's denial letter.

5. On or about July 7, 2009 the Building again suffered water damage as a result of copper pipes having been stolen from the Building (the "Second Loss"). Attached hereto as Exhibit "C" is a true and correct copy of the police report for that incident.

6. Plaintiff filed a second claim for benefits under the Policy as a result of the Second Loss ("Second Claim").

7. Hartford denied the Second Claim in accordance with the terms of its Policy because the Building was vacant and the Policy's Vacancy Clause excluded physical loss or damage resulting from theft, vandalism, and water damage. Attached hereto as Exhibit "D" is a true and correct copy of that denial letter.

8. The Property was deemed unfit for human habitation after the Second Loss by the City of Allentown due to longstanding problems with, inter alia, water infiltration through the roof of the Building. Attached hereto as Exhibit "E" is a true and correct copy of that Order.

9. As a result of Hartford's denial of the First Claim Plaintiff filed suit against Hartford, alleging that Hartford breached the Policy by denying its First Claim and committed statutory bad faith in connection with that denial. See generally Plaintiff's Complaint.

**II.     The Plaintiff**

10.   Plaintiff, 7th & Allen Equities, LLC is a single-asset real estate holding company, which was formed in 1989 by its principal George Diemer to buy and manage this particular Building in Allentown.  Attached hereto as Exhibit "F" are true and correct copies of the pertinent provisions of Mr. Diemer's deposition transcript, pp. 10-11, lns. 20-24 and 1-19.

11.   In 1991 Craig Rohner also became a part-owner in the Plaintiff entity.  Attached hereto as Exhibit "G" are true and correct excerpts from Mr. Rohner's deposition transcript, p. 8, lns. 1-14, see also Exhibit "F" p. 11, lns. 10-19.

12.   Both Mr. Diemer and Mr. Rohner are highly sophisticated and experienced real estate developers, owners and investors.  Exhibit "F" p.10, lns. 14-19 and Exhibit "G" pp. 16-17, lns. 15-24 and 1-20.

13.   The Plaintiff entity exists solely to operate as a commercial landlord, *viz* to manage the Building and collect rent for its owners Mr. Diemer and Mr. Rohner.  Exhibit "G", p. 82, lines 9-18.

14.   Accordingly, the only customary business operations the Plaintiff entity undertakes are the leasing and maintenance of the Building.  Exhibit "G", p. 82, lns. 9-18.

**III.    The Property**

15.   The Building consists of three main floors and a basement.[1]  See Complaint at ¶ 7.

---

[1] A small fourth "floor" exists to house mechanical equipment on the roof of the Building but for all other material purposes the Building consists of three stories and a full basement.

16. Each floor covers approximately 22,000 square feet, making the entire square footage of the Building approximately 88,000 square feet. Plaintiff's First Amended Complaint ¶ 7 and Exhibit "F" at p. 18, lns. 4-6.

17. During its tenure as Building owner Plaintiff leased 14,000 square feet of the first floor to different pharmacies at different times, and was actively leasing that space to Rite Aid at the time of the First and Second Losses. Exhibit "F" pp. 17-18, lns. 24 and 1-6.

18. Plaintiff had previously leased the remaining first floor space to a Dollar Store, but that space has been vacant since the Dollar Store abandoned the Building in the early 2000s. Exhibit "F" p. 18, lns. 7-19.

19. Plaintiff had previously leased the basement of the Building to the Internal Revenue Service, but that space has been vacant since the IRS abandoned the Building in the early 1990s. Exhibit "F" at pp. 12-13, lns. 23-24 and 1-13.

20. Plaintiff had previously leased the second floor of the Building to Brumar Manufacturing until the late 1990s or early 2000s, but that space has been vacant since Brumar abandoned the Building. Exhibit "F" p. 12, lns. 9-22.

21. Plaintiff had previously leased the third floor of the Building to different tenants over the years, but that space has been vacant since the last tenant abandoned the Building in the early 2000s. Exhibit "F" p. 14, lns. 5-20.

22. As early as 1999, Plaintiff was considering abandoning the second and third floors of the Building instead of fixing health and safety problems the City had cited. Attached hereto as Exhibit "H" is a letter from the Plaintiff to the City reflecting that fact.

23. The Building suffered continuous problems with its roof, which allowed water to repeatedly penetrate the Building's interior. Attached hereto as Exhibit "I" is a true and correct copy of Plaintiff's contractor's report regarding required Building repairs.

24. At the time of the First Loss, the only heat provided to the entire 88,000 square foot Building was via a forced air heating system for the 14,000 square foot, first floor retail space rented to Rite Aid. Attached hereto as Exhibit "J" are true and correct copies of Plaintiff's Answers to Hartford Interrogatories; see ¶¶ 7 and 8.

25. The International Building Code, International Fire Code and National Fire Protection Association Code all mandate, inter alia, that buildings with wet-sprinkler systems be maintained at temperatures above 40º, or that other precautions be taken to protect such a system against freezing.

26. Plaintiff had been warned, on at least two prior occasions by independent third parties, Peerless Insurance and Kistler O'Brien, that heat needed to be maintained on the second and third floors of the Property to protect the sprinkler system from freezing. Attached hereto as Exhibit "K" are true and correct copies of those warnings.

27. In 2003 Peerless Insurance advised:

> The sprinkler system is wet pipe type and the upper floors are all non-heated. The heating system should be service inspected and activated for the upper floors and basement to provide at least a 45-degrees interior temperature. This will prevent the potential for sprinkler freezing, pipe break, and resulting water damage.

Exhibit "K".

28. Less than a year later, in 2004, Plaintiff suffered a pipe break in the Building, which its contractors believed was due to freezing. Exhibit "K".

5

29. After that pipe break, Kistler O'Brien similarly advised:

> *NOTE Building heat must be maintained in unoccupied area
> to prevent future problems.

Exhibit "K".

30. Plaintiff was on notice that the second and third floor sprinkler systems lacked adequate freeze protection and presented a clear and present risk of leakage as a result. Exhibits "K" and "L".

31. Having repeatedly advised Plaintiff that, inter alia, the system was not properly protected from freezing, in 2007 Kistler refused to continue performing annual inspections of the Building's fire suppression system because it was not properly being maintained. Exhibit "L".[2]

32. In the days preceding the First Loss, the outside air temperature in Allentown, Pennsylvania was as follows:

    a. March 2, 2009: temperatures ranged from a high of 25º F to a low of 14º F;

    b. March 3, 2009: temperatures ranged from a high of 26º F to a low of 11º F; and

    c. March 4, 2009: temperatures ranged from a high of 34º F to a low of 14º F.

Attached hereto as Exhibit "M" are true and correct weather records for Allentown.

33. The sprinkler head that leaked was located close to an open third floor window and the technician that fixed the frozen sprinkler head concluded that it leaked because it had frozen. Attached hereto as Exhibit "N" are true and correct deposition excerpts from Ron Addis, pp. 26-27, lns. 11-16 and 1-18.

---

[2] Kistler had repeatedly noted that deficiency in its annual inspection reports.

6

34. The Rite Aid district manager, Mr. Fillman, who investigated the sprinkler leak described the third floor of the Building that morning as so cold he could see his breath. Attached hereto as Exhibit "O" are true and correct excerpts from Mr. Fillman's deposition transcript, pp. 48-49, lns. 15-24 and 1-3.

35. The Plaintiff hired the fire protection company Simplex Grinnel and plumber Daryl Lapp to repair the leaking sprinkler system; both companies' technicians indicated in their reports that the Building's sprinkler system had leaked due to freezing. Attached hereto as Exhibit "P" are true and correct copies of those reports.

36. Independent mechanical engineers, Michael Zazula and Michael Plick hired by Hartford to investigate the cause of the First Loss concluded that it had leaked due to freezing. Attached hereto as Exhibit "Q" is a true and correct copy of that report.

37. On or about July 7, 2009 the Building suffered another loss after copper piping was damaged/stolen, which caused water to infiltrate the Building (the "Second Loss"). Exhibit "C".

38. Plaintiff filed a claim for water damage with Hartford in connection with that July 7, 2009 incident (the "Second Claim").

39. Hartford investigated and determined the Building remained vacant, and therefore, the Vacancy Condition excluded coverage for the complained-of water damage. Attached hereto as Exhibit "D" is a true and copy of Hartford's denial letter.

40. Shortly after the Second Loss the City of Allentown's building inspectors returned to the Building and deemed it unfit for human habitation. Exhibit "E".

41. Plaintiff's general contractor, Bill Hart, met with the City of Allentown's building inspector shortly after the Second Loss to inspect the Building and, based on that meeting, he advised Plaintiff's principal Mr. Diemer that:

> Replace/Repair roof. Inspector feels patching is not going to cut it. Roof has been leaking for probably 20 + years. Roof deck is poured concrete and its integrity is in question. Leaks are evident by all the slagmites/stalagtites coming down off the ceiling throughout the 3rd floor. Leaks have also loosened up approximately 2,000 square feet or so of asbestos floor tile which the inspector questioned if it is OK to leave these. We will probably be asked to supply a report. *Roof leaks have traveled throughout floors 3, 2 & 1 and are the main reason the building is condemned.* We are waiting on costs, we should have them by the afternoon of 8/4, but will probably be in the $200-300K range.

Exhibit "H". (Emphasis added).

42. Allentown's building inspector, Patrick Roels, knew of the longstanding problems with this Building. Attached hereto as Exhibit "R" are excerpts from his deposition, p. 21-22, lns. 1-24 and 1-10.

43. Since the two losses, Plaintiff has petitioned the City of Allentown to demolish the Building. Attached hereto as Exhibit "S" is a true and correct copy of Plaintiff's letter regarding its intent to demolish the Building.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

s/Thomas S. Coleman
RICHARD D. GABLE, JR., ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA  19103
Telephone:   (215) 405-9191
Facsimile:   (215) 405-9190
*Attorneys for Defendant,
Hartford Casualty Insurance Company*

Dated: July 24, 2012

## **CERTIFICATE OF SERVICE**

I, Thomas S. Coleman, hereby certify that, on this 24th day of July, 2012 a true and correct copy of the foregoing Statement of Undisputed Facts in Support of Defendant Hartford's Motion for Summary Judgment has been served on the following counsel of record via the Court's Electronic filing system:

Marc Kancher, Esquire
The Kancher Law Firm, LLC
Grove Professional Center
100 Grove Street
Haddonfield, NJ 08033
*Attorney for the Plaintiff*

BUTLER PAPPAS WEIHMULLER
KATZ & CRAIG, LLP

By: s/Thomas Coleman
Thomas S. Coleman, Esquire
1818 Market Street
Suite 2740
Philadelphia, PA 19103
(215) 405-9191
*Attorneys for Defendant,
Hartford Casualty Insurance Company*