# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>                          Plaintiff,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>                          Defendant. | CIVIL ACTION NO. 5:11-01567-JKG |

## REPLY BRIEF OF DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby presents the following Reply to Plaintiff's Opposition to Hartford's Motion for Summary Judgment and in support thereof states as follows:

On August 13, 2012 Plaintiff filed its Brief In Opposition to Hartford's Motion for Summary Judgment ("Plaintiff's Brief"). Plaintiff's Brief raised, *inter alia*, three substantive issues that Hartford responds to herein: 1) Hartford "had a duty to preserve the sprinkler head" and spoilated evidence by failing to do so; 2) "attempting to lease the second and third floors" constitutes conducting "customary operations" in the insured building; and 3) that material issue of fact exists as to the cause of the sprinkler leak. See Plaintiff's Brief at pp. 15, 23, 18, respectively. We reply to each of these three issues *seriatim*.

### I. PLAINTIFF'S SPOILATION ARGUMENT IS BASELESS BOTH FACTUALLY AND LEGALLY

For the first time in this lawsuit, Plaintiff's Brief raises a claim that Hartford should have preserved the subject sprinkler head. Plaintiff's spoliation argument fails for the simple reason that Plaintiff failed to cite any record evidence in support thereof. See

Plaintiff's Brief, pp. 12-16. Further, Plaintiff's spoliation argument ignores the undeniable fact that the subject sprinkler was never within Hartford's control and possession but rather was simply made available to Hartford's consultant, Mike Zazula, for inspection while it was in the possession of Plaintiff's tenant, Rite Aid. Attached hereto as Exhibit "1" is an Affidavit of Hartford's expert, Mike Zazula. Moreover, Mr. Zazula asked Rite Aid at the time if he could take possession of the offending sprinkler head but his request was denied. Id. at ¶ 8-9. Nonetheless, Mr. Zazulla still impressed on Plaintiff's tenant the importance of preserving the sprinkler head as evidence. Id. at ¶ 10. Plaintiff's Brief offers no explanation for why it allowed Rite Aid to maintain possession of the sprinkler head, nor why it did not take steps to preserve and/or inspect the head while it was in Rite Aid's possession.

The only case law cited by Plaintiff in support of its newly-minted spoliation claim, Creazo v. Medtronic, Inc., 903 A.2d 24 (Pa. Super 2006), is completely inapplicable to the instant matter. In Medtronic, a plaintiff who had possession of the allegedly defective device (it was inside his body) and over which he had already brought suit against its manufacturer, failed to advise a third party to preserve the evidence. As Hartford never had possession of the sprinkler head (it was in the possession of Rite Aid) and never had ownership of the sprinkler head (it was owned by Plaintiff), the Medtronic rationale is inapplicable to the disappearance of the sprinkler head.

## II. PLAINTIFF'S ARGUMENT THAT ITS CUSTOMARY OPERATIONS INCLUDE "ATTEMPTING TO LEASE" THE BUILDING IS IN ILLOGICAL AND HAS BEEN REJECTED IN THE JURISDICTIONS IN WHICH IT HAS BEEN CONSIDERED

Plaintiff's only argument that the insured building was not "vacant" at the time of the loss, as defined by the Policy, is that its "customary operations" should be construed

2

to include "attempting to lease" the insured building. See Plaintiff's Brief, p.7 ("the owner continued to try to lease the Building, which was the Plaintiff's 'customary operation'"). Recall that the Policy defines "vacancy" as follows:

### E. PROPERTY LOSS CONDITIONS

\*          \*          \*

#### 8. Vacancy

##### a. Description of Terms

(1) As used in the Vacancy Condition, the term building and the term vacant have the meanings set forth in paragraphs, **(a)** and **(b)** below:

\*    \*    \*

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

(ii) used by the building owner to conduct customary operations.

Plaintiff admits that its sole function is as owner and landlord of the subject building. Plaintiff does not contend that it maintains a business office at the building.

3

As such, the Building's tenantable space can either be classified as "rented" or "vacant". If the Court were to accept, as Plaintiff suggests, a third category such as "vacant, but attempting to rent," it would in essence be re-writing the Policy to provide Plaintiff with much broader coverage than it originally purchased. Additionally, it would render the Vacancy provisions essentially meaningless as every unit in a commercial building almost always falls into either the category of "rented" or "attempting to rent."

In addition to defying logic and common sense, Plaintiff's contention has been rejected by the courts that have considered it. In Hollis v. Travelers Indem. Co. of Conn., 2010 WL 1050991, *9 (W.D.Tenn. March 19, 2010), the court rejected a similar argument, reasoning:

> Plaintiffs are in the business of leasing out buildings. The building that they use to conduct customary operations would be the location where their offices are located, where their phones are received, and their mail is sent. The Building is simply a product involved in their customary operations, not used to conduct them.

See also Habinyon v. Phil. Indem. Ins. Co., 462 Fed. Appx. 70, 2012 WL 497586, *73 (2nd Cir. 2012); Saiz v. Charter Oak Fire Ins. Co., 2007 WL 2701398 (D. Colo. 2007) (rejecting the insured's argument that his attempts to show and sell a vacant restaurant constituted "customary operations"). A similar result is mandated here.

### III. PLAINTIFF'S ARGUMENTS REGARDING THE CAUSE OF THE SPRINKLER LEAK ARE NOT MATERIAL TO THE COURT'S APPLICATION OF THE EXCLUSION

Finally, in a last ditch attempt to further obfuscate the question before the Court and raise a disputed issue of fact, Plaintiff contends the sprinkler head either 1) leaked due to an unspecified heat source having triggered the sprinkler (see Plaintiff's Brief, p. 18-9) or 2) it froze because of frigid air coming in from an open window adjacent to the

4

sprinkler head (Plaintiff's Brief, p. 17). While the overwhelming evidence supports Hartford's contention that the head froze because Plaintiff never bothered to heat the 44,000 square feet of open, vacant space on the second and third floors of the Building, the true cause of the leak is immaterial to this Court's analysis. As explained by the court in Siaz v. Middle Oak Ins. Co., 2007 WL 2701398 (D.Colo. 2007), the Vacancy Condition's sole focus is on whether the system was "protected against freezing" at the time of the loss and not whether the leak was, in fact, caused by the sprinkler system actually freezing. As explained by the Siaz Court:

> The Policy excludes sprinkler leakage "unless [the insured has] protected the system against freezing." This is not the same as excluding all coverage on sprinkler leakage caused by freezing *or* covering all leakage that is not caused by freezing. That is to say, by the plain language of the Policy, sprinkler leakage will be covered if the insured has protected the system against freezing. The cause of the leakage is not relevant, and the coverage will lie even if the leakage was caused by freezing. The only issue relevant to the limitation is whether the insured has taken the requisite action. Here, Plaintiffs have not so much as even alleged they protected the system. Indeed, to the contrary, Plaintiff Saiz maintains that he had turned the heat system off in the upstairs portion of the Brighton Depot building, which is where the malfunctioning sprinkler was located.

Id. 2007 WL 2701398 at *6 (Citations and footnotes omitted; emphasis in original). Here, like in Siaz, the Plaintiff admitted that it did not heat the upstairs floors of the Building and that the sprinkler head leaked. While the overwhelming evidence permits the Court to conclude as a matter of law that the head froze, the true cause of the loss is nevertheless immaterial to the application of the Vacancy clause. Accordingly, there are no issues of material fact precluding summary judgment.[1]

---

[1] And even if the Court believed Plaintiff's expert report relevant to the coverage

5

## CONCLUSION

For reasons stated in its Motion for Summary Judgment and its Reply, Hartford respectfully requests that its Motion be granted.

**BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP**

/s/ Thomas S. Coleman
RICHARD D. GABLE, ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA 19103
Telephone: (215) 405-9191
Facsimile: (215) 405-9190
Attorneys For Defendant, Hartford Casualty Insurance Company

---

analysis, before the Court can consider it the Plaintiff bears the burden of establishing the admissibility of such testimony under the *Daubert* framework. See Humphrey v. Diamant Boart, Inc., 556 F.Supp.2d 167, 173-76 (E.D. NY 2008) (analyzing the standard by which to judge the admissibility of an expert report in the context of a summary judgment motion). Accordingly, Hartford will challenge the admissibility thereof because of, inter alia, rampant methodological error in that Report and has so notified the Court in writing per its procedures.

6

## CERTIFICATE OF SERVICE

I, Richard D. Gable, hereby certify that, on this 13th day of September, 2012 a true and correct copy of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment has been served on the following counsel of record via the Court's Electronic filing system:

Marc Kancher, Esquire
The Kancher Law Firm, LLC
Grove Professional Center
100 Grove Street
Haddonfield, NJ 08033
*Attorney for the Plaintiff*

/s/ Thomas S. Coleman
RICHARD D. GABLE, ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA 19103
Telephone: (215) 405-9191
Facsimile: (215) 405-9190
Attorneys For Defendant, Hartford Casualty Insurance Company

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>               Plaintiff,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>               Defendant. | CIVIL ACTION NO. 5:11-01567-JKG |

## AFFIDAVIT OF MICHAEL ZAZULA

STATE OF PENNSYLVANIA

COUNTY OF Delaware

BEFORE ME, the undersigned authority, personally appeared MICHAEL ZAZULA, and who, after first being sworn, deposes and says:

1. My name is MICHAEL ZAZULA. I am over 21 years of age and otherwise competent to make the statements set forth herein.

2. I have personal knowledge of all matters contained in this Affidavit.

3. On March 11, 2009, I inspected the subject sprinkler head at the insured building located at 602-618 North 7th Street, Allentown, PA (the "subject building").

4. Employee(s) of Rite-Aid were present at the subject building at the time of my March 11, 2009 inspection and the Rite-Aid employee(s) made available the subject sprinkler head for inspection.

5. The Rite-Aid employee(s) specifically stated they were instructed to retain the subject sprinkler head at the conclusion of my inspection.

6. I performed the March 11, 2009 inspection on site at the subject building

and in the presence of the Rite Aid employee(s) that had possession of the subject sprinkler head.

7. At no time was the subject sprinkler head ever received by me, retained by me or in my custody or possession.

8. At the conclusion of my inspection, I specifically asked the Rite Aid employee(s) if I could take possession of the subject sprinkler head as evidence.

9. The Rite Aid employee(s) refused to allow me to take possession of the subject sprinkler head. The Rite Aid employee(s) stated he was informed to not release the sprinkler head and that employee(s) would maintain possession of the sprinkler.

10. After I was denied the ability to take possession of the sprinkler head, I repeatedly advised/informed the Rite Aid employee(s) of the importance to retain the subject sprinkler head as it was clearly a significant evidentiary component in determining the causation of the subject loss.

_____
[signature of Affiant]

Michal Zuzula
[typed name of Affiant]

60 Heather Rd.
Turnersville, N.J. 08012
[address of Affiant]

Dated: 9/11/12

2

STATE OF PENNSYLVANIA

COUNTY OF Delaware

On this, the 11th day of September, 2012, before me De'Lisa Lynn Aronson, the undersigned notary public, personally appeared Michael Zazula,, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that Michael Zazula executed the same for the purposes therein contained and produced New Jersey Drivers License as his identification.

In witness whereof, I hereunto set my hand and official seals.

_____
NOTARY PUBLIC

Dated: 09.11.2012
My Commission Expires: 11.03.2012

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
De'Lisa Lynn Aronson, Notary Public
Aston Twp., Delaware County
My Commission Expires Nov. 3, 2013
Member, Pennsylvania Association of Notaries

3