IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>      Plaintiff,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>      Defendant. | CIVIL ACTION NO. 5:11-01567-JKG |

## ORDER

**AND NOW,** this ___ day of _____, 2012, upon consideration of Hartford Casualty Insurance Company's Motion In Limine to Exclude the Testimony of Paul Martella, C.P.A., it is hereby **ORDERED** that:

1) The report of Paul Martella, C.P.A., dated August 31, 2012 is hereby stricken; and

2) Mr. Martella is precluded from testifying a trial concerning any of the opinions contained in that report.

BY THE COURT:

_____
                        J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>Plaintiff,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 5:11-01567-JKG |

### DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF PAUL MARTELLA, C.P.A.

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby moves to exclude the testimony of Paul Martella, C.P.A. and in support thereof incorporates herein its Brief in Support thereof as if set forth at length.

                                            BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

                                            s/Thomas S. Coleman
                                            RICHARD D. GABLE, JR., ESQ.
                                            rgable@butlerpappas.com
                                            THOMAS S. COLEMAN, ESQ.
                                            tcoleman@butlerpappas.com
                                            1818 Market Street, Suite 2740
                                            Philadelphia, PA  19103
                                            Telephone:  (215) 405-9191
                                            Facsimile:   (215) 405-9190
                                            *Attorneys for Defendant, Hartford Casualty*
Dated: September 24, 2012          *Insurance Company*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 7TH & ALLEN EQUITIES, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:11-01567-JKG |
| v. | : | |
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

## DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF PAUL MARTELLA, C.P.A.

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby presents the following Brief in Support of its Motion In Limine to Exclude The Testimony of Paul Martella, C.P.A..

### I.   Introduction

The background of this insurance coverage dispute is set forth at length in Hartford's Brief In Support of its Motion for Summary Judgment, which is incorporated herein by reference and attached hereto for the Court's convenience as Exhibit "A," see pp. 1-4.

On or about August 31, 2012, Plaintiff's accountant, Paul Martella, C.P.A., authored a short report, a copy of which is attached hereto as Exhibit "B". The Martella Report concludes that Plaintiff suffered $5,753,371 of damages because of "water damage to the Plaintiff's building. That Report was not received by Hartford until August 31, 2012, which was beyond the deadline as stated in the Court's June 20, 2012 Order for disclosing expert reports.

The Martella Report is irrelevant, highly prejudicial and should be excluded from evidence because Mr. Martella: (1) apparently did not review any of the undeniably pertinent, factual information developed through discovery, which directly bears on his opinions; (2) relies heavily on a "conceptual" construction estimate that, on its face, was not prepared for the reason he relies on it (and therefore contains information unrelated to the claim) thus making it speculative and not based upon any generally accepted accounting or economic principles; and finally 3) neglects to reference critical factual documentation in support of the various assumptions made therein. Plaintiff cannot simply make categories of damages admissible (which normally would require an expert construction or facilities expert's testimony) by including those speculative numbers in a CPA report. Simply including unsupported damages information in a CPA report (especially when the CPA has no independent basis to determine the accuracy of such information) does not magically make those alleged damages admissible for the purposes of the CPA report, or any other purposes. The Martella Report is, therefore, nothing more than a thinly disguised attempt by Plaintiff to have its accountant allowed to package Plaintiff's alleged damage claim and testify regarding the same at trial.

## II.    Legal Standard for Admissibility of Testimony

Federal Rule of Evidence 104 provides as follows:

> "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court..."

Fed.R.Evid. 104. For the reasons set forth below, Plaintiff is not qualified to be a witness at trial, nor will his anticipated testimony be admissible.

2

## III. The Martella Report Is Fatally Flawed

The Martella Report does not contain or reference the facts necessary to support its conclusion and relies on a slew of erroneous facts in reaching its stated conclusion, and therefore, is irrelevant, highly prejudicial, and inadmissible. Starting with the most obviously egregious errors, we highlight specific points for the Court's consideration.

### (i) The Alleged $4,670,267 "Cost to Restore Building" Is Wholly Unrelated to the Insurance Claim

The Martella Report cites to a "restoration proposal from Alliance Environmental Systems, Inc. dated June 1, 2012." A copy of that report is attached hereto as Exhibit "C" (hereinafter "A&E Budget") for the Court's review. The A&E Budget describes itself as a "conceptual budget for the construction of your proposed Building Restoration Project." Tellingly, however, Martella does not indicate whether he spoke with the authors of the A&E Budget to determine why it was prepared, what costs it was intended to/did capture, or any other pertinent information about that "conceptual budget". Instead, it appears Martella blindly adopted -- lock, stock, and barrel -- some undisclosed person's direction that the Budget was prepared to correct the damages Plaintiff's building suffered as a result of the March 4, 2009 sprinkler leak. But, simply stated, nothing could be further from the truth, as is made painfully obvious by even the most cursory examination of the detailed narrative describing the remodeling costs contained therein.

To that end the A&E Budget is broken down into four phases; the first phase is "Building Core and Shell" and itemizes the scope of work to include:

> Structural steel and miscellaneous metals, new membrane roofing system, new exterior doors and frames, reglazing of existing window frame, storefront repairs as required, new

3

> wet sprinkler system throughout (12), new 18 ton rooftop units ... and new electrical services...

Plaintiff is, therefore, contending that the internal, third floor sprinkler discharge ruined, *inter alia*: 1) rooftop HVAC units, 2) certain structural steel, 3) exterior doors on the first floor, and 4) even the fire suppression sprinkler system itself. That contention is not supported by any facts or logic and, at best, highlights the arbitrary and capricious nature of the Martella Report. At worst, those contentions are a misleading attempt to make claim for building components not damaged by the March 4, 2009 incident. Finally, although Plaintiff's lawyer acknowledged that the roof repair was not being claimed, the fact remains that the roof expense was included in the A&E Budget, clearly evidencing that said Budget was not prepared to capture the damage associated with the March 4, 2009 incident. [1]

The next phase in the A&E Budget is entitled "Landlord Vanilla Box" and itemizes that scope of work to include:

> **Landlord Vanilla Box (79,000 sf)** – Scope includes white box construction of 10,000 sf office use at basement level, 11,000 sf retail use at 1st floor (Rite Aid), 10,000 sf retail sue at 1st floor (Dollar Store), 2,000 sf service corridor from retail to leading [sic], 23,000 sf office/manufacturing mixed use at the 2nd floor, 23,000 sf manufacturing use at 3rd floor. White box contains tapes & spackled sheetrock perimeter walls (and demising walls at 1st floor), 2x4 ACT throughout, interior doors and frames at all non retail location, construction of 8 restrooms (2 per floor), including all plumbing & fixturing, (1) four stop elevator for ADA accessibility, fire sprinkler heads rutned down in ceiling, and electrical service to all non retail locations consisting of lighting, power & fire alarm.

Once again the "damage" being claimed by Plaintiff does not relate to the sprinkler leak

---

[1] And even if the roof cost is removed from the A&E Budget, the Martella figures do not seem to properly match up with the budgeted figures.

at issue. For example, there is no evidence that the sprinkler leak required the construction of 8 completely new restrooms; nor that the elevator, which has not been operational since at least 2002, requires replacement. Moreover, although the A&E Budget includes costs to install sheetrock walls and acoustical ceilings throughout all four floors of the building, it is undeniable that much of the building did not have such finishes in March of 2009.

The next two phases in the A&E Budget set forth the expense of fitting-out the Rite Aid and Dollar Store spaces, which includes all "finishes and mechanical systems." But the Rite Aid store was reopened very shortly after the March 4, 2009 sprinkler leak and the Rite Aid employees testified that the damage to the store was very limited. Thus, the factual basis for Plaintiff's claim that it needed to be completely remodeled is lacking. Likewise, the factual basis for Plaintiff's claim that the Dollar Store space needed remodeling because of the leak is also lacking, seeing as the Dollar Store had closed years before the leak occurred and there is no evidence of damage to that space. Finally, without an expert or contractor opinion backing up the costs associated with the construction there is no basis for plaintiff to claim they are proffering accurate construction costs/damages, therefore, making all of these damages speculative. Without identifying the source or method of the construction estimates, there also is no way for Hartford to have a fair chance to challenge the method of calculating the damages or supporting costs.

(ii) <u>The "Loss of Annual Rental Income" And Related Claims Are Not Based on Fact</u>

Plaintiff makes claim for approximately $610,220 in costs related to the loss of Rite Aid as a tenant. It is an undeniable fact, however, that Rite Aid reopened shortly

after the March 4, 2009 incident and was only forced to vacate the building after a second, separate water leak occurred in July 2009 (allegedly due to theft) when the City of Allentown condemned the building. Moreover, according to the Allentown City Inspector and Plaintiff's own contractor, the "main reason" for the building being condemned in July had nothing to do with the March incident but was because the building's roof had been leaking for 20+ years. B. Hart Notes regarding inspection attached as Exhibit "D." See 1754.02 (Roof leaks have traveled throughout Floors 3, 2 and 1 and are the main reason the building is condemned.) Thus, to claim as the Martella Report does, that Rite Aid left because of the March 4, 2009 leak is incorrect; and even accepting the Plaintiff's linking of the two events as being true, the only possible connection between Rite Aid's exit and the March 4, 2009 event is not the damage itself, but Plaintiff's failure to mitigate any damage caused by that event.[2]

    (iii)    "Repairs Made to Building"

Plaintiff makes claim for $165,000 for "repairs made to the building." But Mr. Martella fails to identify which repairs these are, or why/when such repairs were made. Accordingly, it is impossible to determine, let alone reasonably rely on the contention that such repairs were attributable to the March 9, 2009 incident (and especially in light of the other claims made for obviously unrelated costs). Without identifying a witness or a method for calculating the $165,000 number, such damages are also speculative and beyond the scope of a CPAs knowledge (again, unless he can reference a source qualified to provide those numbers, then such numbers may be permissible for a CPA to rely upon). Plaintiff cannot simply make categories of damages admissible (which

---

[2] At times Plaintiff has vaguely argued that the July incident arose -- in some undefined manner -- from the March incident, but tellingly has never articulated a factual basis for that argument. See Hartford Motion to Limit Damages at § II. (v).

normally would require an expert construction expert's testimony) by including those speculative numbers in a CPA report and then claim that a CPA is allowed to rely upon those numbers blindly. Such blind reliance upon numbers provided by the client is per se speculative, and does not make those damages admissible for other purposes either.

(iv) "Estimated Legal Fees" And "Cost of Funds"

Plaintiff provided no support for these bald assertions; nor are "estimated" attorney's fees a recoverable component of damages for various reasons. And it is unclear how Martella calculated the "cost of funds" figure. Accordingly, any reference to these figures is entirely improper.

(v) The Martella Report is Nothing More Than A Thinly Disguised Attempt to Get the A&E Budget into Evidence

As set forth in detail above, the Martella Report relies heavily on the A&E Budget to justify many of its assertions. But the opinions set forth in the A&E Budget are the domain of expert testimony. Yet Hartford never received an expert report from A&E Construction. Accordingly, to allow Mr. Martella to testify as to information contained in that Budget permits an improper 'end-around' of the expert disclosure requirements, quite prejudicially to Hartford.

## IV. Conclusion

The Martella Report makes claim for costs not related to the sprinkler leak of March 4, 2012. Mr. Martella failed to analyze or verify -- yet still wholesale relied on -- a "conceptual budget" that was clearly not prepared to capture expenses related to the March 4, 2009 incident. Even an expert cannot simply testify regarding facts provided to them by another person without proper verification. Finally, Martella apparently failed to review the extensive factual record developed in discovery, which unequivocally

contradicts many of his assumptions and opinions. Accordingly, his report is irrelevant and conclusions unreliable and highly prejudicial.

**WHEREFORE**, Hartford respectfully requests that Mr. Martella be precluded from testifying at trial and that it be granted any further relief the Court considers just and appropriate.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

Dated: September 24, 2012

s/Thomas S. Coleman
RICHARD D.GABLE, JR., ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA 19103
Telephone: (215) 405-9191
Facsimile: (215) 405-9190
*Attorneys for Defendant, Hartford Casualty Insurance Company*

## CERTIFICATE OF SERVICE

I, Thomas S. Coleman, hereby certify that, on this 24th day of September, 2012 a true and correct copy of Defendant's Motion in Limine to Exclude the Expert Testimony of Paul Martella, C.P.A. and Memorandum of Law in Support thereof has been served on the following counsel of record via the Court's Electronic filing system:

Mark S. Kancher, Esquire
The Kancher Law Firm, LLC
Grove Professional Center
100 Grove Street
Haddonfield, NJ 08033

Mark S. Haltzman, Esq.
Silverang & Donohoe, LLC
595 East Lancaster Avenue, Ste. 203
St. Davids, PA  19087

*Attorneys for the Plaintiff*

BUTLER PAPPAS WEIHMULLER
KATZ & CRAIG, LLP


By: ___s/Thomas Coleman___
     Thomas S. Coleman, Esquire
     1818 Market Street
     Suite 2740
     Philadelphia, PA  19103
     (215) 405-9191
     *Attorneys for Defendant,*
     *Hartford Casualty Insurance Company*