# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 7TH & ALLEN EQUITIES, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:11-01567-JKG |
| v. | : | |
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

## DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby presents the following Brief in Support of its Motion For Summary Judgment.

**I.    Introduction**

This is a first-party insurance coverage case instituted by Plaintiff, the policyholder against Hartford, its insurance company for coverage under a policy of commercial property insurance. In that regard, in March of 2009 Hartford insured Plaintiff's large commercial building in Allentown, Pennsylvania, which suffered a sprinkler leak and resulting water damage. Plaintiff made claim under the policy to Hartford for that damage.

Hartford thoroughly investigated Plaintiff's claim and learned that: 1) the sprinkler leak had occurred on the vacant, unheated third floor of the building; 2) the building in its entirety was considered "vacant" as defined by Hartford's policy because it was not at least 31% rented, and 3) Plaintiff had not protected the building's sprinkler

system against freezing, as it was required to do for coverage to apply under the Policy's Vacancy Condition. Accordingly, Hartford's Policy did not insure that loss and Plaintiff's claim was denied.[1]

Hartford's Statement of Undisputed Material Facts confirms the accuracy of the factual determinations made by Hartford during its investigation. Application of those undisputed material facts to the Policy's express and unambiguous Vacancy Condition compels a ruling in Hartford's favor as a matter of law. Accordingly, for the reasons set forth below Hartford respectfully requests that this Court grant it summary judgment on all counts of Plaintiff's Complaint.

## II.    Background

Plaintiff is a single-purpose entity whose sole function is to lease and maintain a large commercial property located at 602-618 North 7th Street, Allentown, Pennsylvania (the "Building"). Hartford Statement of Undisputed Facts ("HSUF") ¶ 13. The Building consists of four stories, each with 22,000 sq/ft of rentable space. Id. at ¶ 15. Although the Building had once housed, inter alia, a garment manufacturer and a thrift store, as of 2009 its only remaining tenant was a Rite-Aid pharmacy, which leased 14,000 sq/ft on the first floor. Id. at ¶ 17-21. The remainder of the Building was vacant.[2] Id.

Hartford insured the Building under Policy No. 12 SBA BH6001 DW (the "Policy") with effective dates December 29, 2008 through December 29, 2009. HSUF at ¶ 1. In the early morning hours of March 4, 2009, the sprinkler system located on the third

---

[1] Four months later, Plaintiff filed a second claim for water damage resulting from theft and/or vandalism at the building, which was also denied by Hartford pursuant to the Policy's same Vacancy Condition, as discussed further below.
[2] Indeed, since as early as 1999 instead of fixing the health and safety violations the City of Allentown had cited it for, Plaintiff had been contemplating abandoning and sealing off the second and third floors of the Building. HSUF ¶ 22.

2

floor of the Building leaked, causing water to infiltrate the Building (the "First Loss"). Plaintiff's First Amended Complaint ¶ 11.

Plaintiff filed a claim with Hartford for benefits under the Policy as a result of the Loss (the "First Claim"). Plaintiff's First Amended Complaint ¶ 17. Hartford investigated the claim and found the Building was vacant as defined by the Policy and that Plaintiff had neglected to protect the Building's sprinkler system from freezing. HSUF ¶ 4. For these reasons, which are discussed in more detail below, Plaintiff's claim was denied.

About four months later, the Building suffered further water damage when domestic copper water pipes were stolen and/or vandalized therein (the "Second Loss"). HSUF ¶¶ 5-7. Plaintiff filed yet another claim with Hartford under the Policy as a result of that loss (the "Second Claim"). Hartford again investigated and found that the Building remained vacant and that the loss was caused by theft and/or vandalism. Id. Accordingly, Hartford denied that claim based on the Policy's Vacancy Condition, which excluded coverage for theft, vandalism and water damage if the Building was vacant. Id. Shortly after the Second Loss, the City of Allentown's building inspectors deemed the Building unfit for human habitation and condemned it. HSUF ¶ 8.

Plaintiff filed its First Amended Complaint against Hartford on or about June 3, 2011. Hartford filed its Answer and Affirmative Defenses on July 20, 2011, asserting inter alia, the Vacancy Condition as a complete defense to Plaintiff's claims.[3] Discovery has unequivocally revealed that the Building suffered longstanding problems with, inter alia, water infiltration through its roof. HSUF ¶ 41. Further, Hartford learned that the City of Allentown's building inspectors had been monitoring this Building because of

---

[3] Hartford also asserted the Policy's cooperation clause as a defense because Plaintiff refused and/or neglected to provide the documentation that Hartford was requesting concerning how the Building had been heated. See Hartford's Answer and Affirmative Defenses 4th Affirmative Defense.

3

prior complaints with its condition. HSUF ¶ 42. Hartford also learned that although the Building had been condemned by Allentown officials immediately after the Second Loss, that condemnation stemmed largely from longstanding roof problems and Plaintiff's apparent refusal to correct the cited deficiencies. HSUF ¶ 41. Finally, Hartford learned that Plaintiff was seeking to close parts of the Building down as early as 1999 and persisted with those efforts after the two losses addressed herein. HSUF ¶¶ 22 and 42. Accordingly, sufficient discovery has concluded to make the filing and disposition of this summary judgment motion ripe.[4]

### III.   Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Startzell v. City of Philadelphia, 533 F.3d 183, 192 (3d Cir. 2008). The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; El. v. Southeastern Pennsylvania Transportation Authority, 479 F.3d 232, 237 (3d Cir. 2007).

The movant must set forth the legal elements of its theory and point to specific evidence which supports each element. Combustion Systems Services, Inc. v. Schuylkill Energy Resources, Inc., 1994 U.S. Dist. LEXIS 7133 (E.D.Pa. May 18, 1994) (Huyett, S.J.); accord Board of Sapphire Bay Condominium West v. Simpson, 2010

---

[4] Due to scheduling difficulties with certain third party entities and people, the parties have agreed to conduct limited further discovery beyond the summary judgment deadline; Hartford would, therefore, respectfully request the right to supplement this Motion in the event that further material evidence is uncovered.

4

# EXHIBIT B

# REPORT OF PAUL MARTELLA, C.P.A.
## August 31, 2012

Seventh & Allen Equities, LLC
v.
The Hartford Insurance Company

## I. Introduction

I have prepared this report for the above entitled litigation. The conclusion presented herein is limited only by the uncertainty of future events and is my professional opinion, to a reasonable degree of accounting certainty. My compensation is determined based on an hourly rate for services performed, and is not contingent on any action or event resulting from the conclusions or use of this report.

## II. Assignment

I was retained by the law firm of Mark Kancher. The scope of my assignment was to quantify the financial impact to Seventh & Allen Equities, LLC (SAE) through August 31, 2012, caused by water damage to their building located at 7th & Allen Streets, Allentown, PA.

## III. Expert Opinion

To a reasonable degree of accounting certainty, it is my opinion that the financial impact to SAE caused by water damage to their building located at 7th & Allen Streets, Allentown, PA is $5,753,371 through August 31, 2012, as summarized below:

### *Summary Amounts (See Exhibit A for Selected Detail)*

| | |
|---|---|
| Loss of Annual Rental Income | $454,130 |
| Loss of Common Area Charge Reimbursement | $84,313 |
| Loss of Real Estate Tax Reimbursement | $71,777 |
| Cost to Restore Building | $4,670,267 |
| Cost of Funds @ 6% | $57,884 |
| Repairs Made to Building | $165,000 |
| Estimated Legal Fees to Completion | $250,000 |
| Total | $5,753,371 |

Note: At completion, cost of funds will accrue at 6% or $345,202 annually on an uncompounded basis.

## IV. Work Performed

I read the lease agreement dated June 6, 1990 between 7th & Allen Equities and Fay's Incorporated.

I reviewed letter dated April 16, 2005 from Eckerd electing to exercise the five year option for the period ended April 30, 2011.

I reviewed the restoration proposal from Alliance Environmental Systems, Inc. dated June 1, 2012.

I reviewed SAE's accounting records from inception to present.

Lastly, I prepared a computer model to quantify the financial impact to SAE through August 31, 2012, caused by water damage to their building located at 7th & Allen Streets, Allentown, PA. A copy of this computer model is provided as exhibit A of this report.

## V. Qualifications

I have been a practicing Certified Public Accountant since 1978. My practice has specialized in providing services to clients in the real estate development, construction, leasing, and management industries. I have also worked in the private sector as regional Controller for The Linpro Company, as Controller for PACE Construction, and as Chief Financial Officer for Development East Associates.

*Paul Martella, C.P.A.*

Paul Martella, C.P.A.
August 31, 2012

Exhibit A

SEVENTH & ALLEN EQUITIES, LLC
Financial Impact Resulting from Water Damage - Selected Detail
Prepared By: Paul Martella, C.P.A.
Date: August 31, 2012

### I. LOST ANNUAL RENTS:

| from | to | # months | monthly rent | total |
|---|---|---|---|---|
| 8/1/2009 | 4/30/2011 | 21 | $12,026 | $252,546 |
| 5/1/2011 | 8/31/2012 | 16 | $12,599 | $201,584 (1) |
| | total lost base rents | | | $454,130 |

### II. LOST COMMON AREA CHARGE REIMBURSEMENT:

| from | to | cam | insurance | factor | total |
|---|---|---|---|---|---|
| 1/1/2009 | 12/31/2009 | $40,434 | $19,611 | 37.50% | $22,517 |
| 1/1/2010 | 12/31/2010 | $31,433 | $53,955 | 37.50% | $32,021 |
| 1/1/2011 | 12/31/2011 | $29,116 | $14,247 | 37.50% | $16,261 |
| 1/1/2012 | 8/31/2012 | $10,221 | $25,816 | 37.50% | $13,514 |
| | total lost common area charge reimbursement | | | | $84,313 |

### III. LOST REAL ESTATE TAX REIMBURSEMENT:

| from | to | type | amount | factor | total |
|---|---|---|---|---|---|
| 1/1/2009 | 12/31/2009 | county | $897 | 100.00% | $897 |
| 1/1/2009 | 12/31/2009 | county | $4,741 | 37.50% | $1,778 |
| 7/1/2009 | 6/30/2010 | school | $3,780 | 100.00% | $3,780 |
| 7/1/2009 | 6/30/2010 | school | $19,838 | 37.50% | $7,439 |
| 1/1/2010 | 12/31/2010 | county | $897 | 100.00% | $897 |
| 1/1/2010 | 12/31/2010 | county | $4,741 | 37.50% | $1,778 |
| 1/1/2010 | 12/31/2010 | city | $938 | 100.00% | $938 |
| 1/1/2010 | 12/31/2010 | city | $10,558 | 37.50% | $3,959 |
| 7/1/2010 | 6/30/2011 | school | $3,780 | 100.00% | $3,780 |
| 7/1/2010 | 6/30/2011 | school | $19,366 | 37.50% | $7,262 |
| 1/1/2011 | 12/31/2011 | county | $1,041 | 100.00% | $1,041 |
| 1/1/2011 | 12/31/2011 | county | $5,504 | 37.50% | $2,064 |
| 1/1/2011 | 12/31/2011 | city | $938 | 100.00% | $938 |
| 1/1/2011 | 12/31/2011 | city | $10,558 | 37.50% | $3,959 |
| 7/1/2011 | 6/30/2012 | school | $3,780 | 100.00% | $3,780 |
| 7/1/2011 | 6/30/2012 | school | $19,366 | 37.50% | $7,262 |
| 1/1/2012 | 12/31/2011 | county | $1,041 | 100.00% | $1,041 |
| 1/1/2012 | 12/31/2011 | county | $5,244 | 37.50% | $1,966 |
| 1/1/2012 | 12/31/2011 | city | $938 | 100.00% | $938 |
| 1/1/2012 | 12/31/2011 | city | $10,558 | 37.50% | $3,959 |
| 7/1/2012 | 8/31/2012 | school | $3,760 | 100.00% | $3,760 |
| 7/1/2012 | 8/31/2012 | school | $22,830 | 37.50% | $8,561 |
| | total lost real estate tax reimbursement | | | | $71,777 |

(1) Assumption is that Rite Aid would have exercised lease option.

Exhibit A

SEVENTH & ALLEN EQUITIES, LLC
Financial Impact Resulting from Water Damage - Selected Detail
Prepared By: Paul Martella, C.P.A.
Date: August 31, 2012

### IV. COST TO RESTORE:
Proposal From A & E Construction Company:

| | |
|---|---:|
| Building Core & Shell | 1,731,528 |
| Less Roofing | -254,750 |
| Landlord Vanilla Box | 2,404,327 |
| Rite Aid Tenant Fit Out | 538,273 |
| Dollar Store Fitout | 250,889 |
| Total cost to restore | 4,670,267 |

# EXHIBIT C

# EXHIBIT C

# A & E Construction Co.



June 1, 2012

7th & Allen Equities
7th & Allen Streets
Allentown, PA
Attn: George Diemer
Email: georgemdiemer@hotmail.com

Re: 7th & Allen Building Restoration

Dear Mr. Diemer,

In accordance with your request, A & E Construction Co. is pleased to present our conceptual budget for the construction of your proposed Building Restoration Project in Allentown, PA.

Our proposal to construct the project as outlined is:

**Four Million, Eight Hundred Seventy-Five Thousand and 00/100 Dollars ($4,875,000.00)**

**Qualifications**

- This budget has been broken into four general phases of work:
    - ***Building Core & Shell (92,000 sf)*** – Scope includes Asbestos abatement, general demolition & cleanup, structural steel & miscellaneous metals, new membrane roofing system, new exterior doors & frames, reglazing of existing window frames, storefront repairs as required, new wet sprinkler system throughout, (12) new 18 ton rooftop units (HVAC assumed as approx. 1 ton cooling/425 sq), and new electrical services terminated at tenants CT's/disconnects
    - ***Landlord Vanilla Box (79,000 sf)*** – Scope includes white box construction of 10,000 sf office use at basement level, 11,000 sf retail use at 1st floor (Rite Aid), 10,000 sf retail use at 1st floor (Dollar Store), 2,000 sf service corridor from retail to leading dock, 23,000 sf office/manufacturing mixed use at 2nd floor, 23,000 sf manufacturing use at 3rd floor. White box contains taped & spackled sheetrock perimeter walls (and demising walls at 1st floor), 2x4 ACT throughout, interior doors & frames at all non retail locations, construction of 8 restrooms (2 per floor), including all plumbing & fixturing, (1) four stop elevator for ADA accessibility, fire sprinkler heads turned down in ceiling, and electrical service to all non retail locations consisting of lighting, power & fire alarm
    - ***Rite Aid Fitout (11,000 sf)*** – Scope includes all finishes and mechanical systems as per the standard Rite Aid prototype. These costs were assumed based upon previous and comparable Rite Aid stores recently constructed by A&E
    - ***Dollar Store Fitout (10,000 sf)*** - Scope includes all finishes and mechanical systems as per typical requirements of similar type tenants. This costs were assumed based upon a comparable 'Dollar General' store

# A & E Construction Co.



- We have included costs for new handrails in the stairwell to bring the building to code; we have not included any additional costs beyond this for any other modifications to the existing stairwell nor have we included costs for other means of egress. If it is determined by code that the existing stairwell does not provide proper means of egress for the building occupants, additional costs will be in order.
- It must be noted that this is a conceptual budget and further design drawings will need to be provided before final pricing can be confirmed/adjusted.

**Alternates**

- Provide a 100% Payment & Performance Bond for the contract amount - $50,017.00

**Additional Allowances**

- Architectural & Structural Design:   2.5%   - $93,735.00
- MEP/Systems Design:   1%   - $37,495.00
- Construction Contingency:   3%   - $112,500.00
- Permit Fees & Costs   2%   - 74,988

**Exclusions**

- Liquidated damages
- Premium time
- Security or watchman
- Unforeseen sub-surface conditions such as rock, unsuitable materials, trash, hazardous waste, or underground storage tanks.
- Builders risk insurance and deductible
- Cost of a performance and payment bond
- Utility connection/disconnection fees, deposits, and primary distribution fees.
- Relocation of existing utilities, power and/or guy poles.
- Security system, security hardware, card readers, and associated equipment.
- Telephone, Data, Intercom or PA systems
- State, County, or Township land development, application, approval fees or escrows

**A further breakdown of our proposal is attached for your review.**

We thank you for considering A & E Construction Co., and we appreciate the opportunity to bid on this project. Should you have any questions or need further clarifications, please do not hesitate to call our office.

Sincerely,

Nate Tayoun
A&E Construction Co.

Attachment(s):
- Budget Breakdown

**G&E Construction Co.**
BUILDERS ♦ CONSTRUCTION MANAGERS

**7th & Allen Equities, LLC.**
7th & Allen Building Restoration
Allentown, PA

Date: 06.01.12
Rev.:

Estimate Summary

Area (s.f.): 92,000 | 92,000 | 79,000 | 11,000 | 10,000 | 92,000

### Conceptual Budget Estimate

| C.S.I. | Description | Building Core & Shell | Landlord Vanilla Box | Rite Aid Tenant Fitout | Dollar Store Fitout | Totals |
|---|---|---|---|---|---|---|
| 02060 | DEMOLITION/ASBESTOS ABATEMENT | $ 285,700 | $ - | $ - | $ - | $ 285,700 |
| 02200 | SITEWORK | $ - | $ - | $ - | $ - | Excluded |
| 03300 | CAST-IN-PLACE CONCRETE | $ - | $ 32,000 | $ - | $ - | $ 32,000 |
| 04200 | UNIT MASONRY | $ - | $ - | $ - | $ - | Excluded |
| 05100 | STRUCTURAL STEEL & MISC METALS | $ 53,600 | $ 18,000 | $ - | $ - | $ 71,600 |
| 06100 | ROUGH CARPENTRY | $ - | $ 13,600 | $ - | $ - | $ 13,600 |
| 06400 | ARCHITECTURAL WOODWORK | $ - | $ - | $ 14,850 | $ - | $ 14,850 |
| 07500 | ROOFING | $ 254,750 | $ - | $ - | $ - | $ 254,750 |
| 07900 | JOINT SEALANTS | $ - | $ 8,000 | $ 1,020 | $ 300 | $ 9,320 |
| 08100 | DOORS / FRAMES / HARDWARE | $ 8,400 | $ 20,800 | $ 3,800 | $ 3,550 | $ 36,550 |
| 08400 | STOREFRONT, ENTRANCES, & GLAZING | $ 24,160 | $ - | $ - | $ - | $ 24,160 |
| 09250 | METAL STUDS & DRYWALL ASSEMBLIES | $ - | $ 444,960 | $ 129,320 | $ 57,600 | $ 631,880 |
| 09300 | CERAMIC TILE WORK | $ - | $ - | $ - | $ - | Excluded |
| 09500 | ACOUSTICAL CEILINGS | $ - | $ 250,250 | $ - | $ - | $ 250,250 |
| 09600 | FLOORING (CARPET & RESILIENT) | $ - | $ - | $ 45,980 | $ 32,500 | $ 78,480 |
| 09900 | PAINTS & COATINGS | $ - | $ - | $ 21,780 | $ 2,700 | $ 24,480 |
| 10000 | SPECIALTIES | $ - | $ 4,500 | $ 3,990 | $ 350 | $ 8,840 |
| 12000 | ELEVATORS | $ - | $ 64,000 | $ - | $ - | $ 64,000 |
| 15300 | FIRE PROTECTION | $ 255,000 | $ 38,500 | $ - | $ - | $ 293,500 |
| 15400 | PLUMBING | $ - | $ 44,800 | $ 9,910 | $ 6,200 | $ 60,910 |
| 15500 | H.V.A.C. | $ 332,400 | $ 108,000 | $ 47,110 | $ 51,100 | $ 538,610 |
| 16000 | ELECTRICAL | $ 104,200 | $ 783,000 | $ 132,010 | $ 36,700 | $ 1,055,910 |
| | **Total Trade Costs** | $ 1,318,210 | $ 1,830,410 | $ 409,770 | $ 191,000 | $ 3,749,390 |
| | GENERAL CONDITIONS 10.8% | $ 142,226 | $ 197,490 | $ 44,212 | $ 20,608 | $ 404,535 |
| | ARCHITECTURAL DESIGN ALLOWANCE 2.50% | $ 32,955 | $ 45,760 | $ 10,244 | $ 4,775 | $ 93,735 |
| | MEP/SYSTEMS ENGINEERING ALLOWANCE 1.00% | $ 13,182 | $ 18,304 | $ 4,099 | $ 1,910 | $ 37,495 |
| | CONSTRUCTION CONTINGENCY 3.00% | $ 39,546 | $ 54,913 | $ 12,310 | $ 5,730 | $ 112,500 |
| | PERMIT 2.00% | $ 26,364 | $ 36,608 | $ 8,195 | $ 3,820 | $ 74,988 |
| | INSURANCE BURDEN 0.80% | $ 10,546 | $ 14,643 | $ 3,278 | $ 1,528 | $ 29,995 |
| | BUSINESS / MERCANTILE TAX 0.30% | $ 3,955 | $ 5,491 | $ 1,230 | $ 575 | $ 11,251 |
| | BUILDERS RISK INSURANCE 0.00% | $ - | $ - | $ - | $ - | $ - |
| | **Construction Costs** | $ 1,586,985 | $ 2,203,620 | $ 493,338 | $ 229,946 | $ 4,513,889 |
| | FEE 8.0% | $ 126,959 | $ 176,290 | $ 39,467 | $ 18,396 | $ 361,111 |
| | **TOTAL COST** | | | | | |
| | PERFORMANCE & PAYMENT BOND COST | $ 17,585 | $ 24,418 | $ 5,467 | $ 2,548 | $ 50,017 |

# EXHIBIT D

Case 5:11-cv-01567-JKG   Document 66-1   Filed 09/24/12   Page 16 of 18



**WMH Construction, LLC**

34 Oriole Way
Medford, NJ 08055
609-458-7317
billhart34@hotmail.com

August 2, 2009

To:     George M. Diemer

From:   Bill Hart, *dictated but not read*

RE:     **Seventh & Allen Building Code Repairs Update**

1754.02   area located on 7th street corner, upper portion. Inspector wants loose bricks removed and re-painted. Area has beenw et for along time. Water damage could be extensive. They are ooking for no loose bricks and sound condition of wall. I can get an estimate to do the work based on what visually can be seen, but it might not refelct the tru costs.  – WMH estimate = $20,000

1754.02   Replace/Repair roof. Inspector feels patching is not going to cut it. Roof has been leaking for probably 20 + years. Roof deck is poured concrete and its integrity is in question. Leaks are evident by all the slagmites/stalagtites coming down off the ceiling throughout the 3rd floor. Leaks have also loosned up approximately 2,000 square feet or so of asbestos floor tile which the inspector questioned if it is OK to leave these. We will probably be asked to supply a report. Roof leaks have traveled throughout floors 3, 2 & 1 and are the main reason the building is condemned. We are waiting on costs, we should have them by the afternoon of 8/4, but will probably be in the $200-300K range.

1754.04   Replace/Repair windows. Windows are basically shot and holding them closed by bracing with wood is not OK and not working. The inspector recommends glass block.  – WMH Estimate = $3,000

1755.02   All floors wet and damp -- WMH Estimate = $4,000

1756      Remove water soaked/rotting items
          WMH Estimate = Labor - $15,000, Dumpsters - $10,000

1755.05   Replace all missing stained damaged ceiling tiles, approx 10,000 square feet –
          WMH Estimate = $10,000

1756.08   Repair vents/drains/pluming throughout. Should cap off unused plumbing and

0686

|   |   |
|---|---|
|   | shut off anything uneccesary. Should have plumbers estimate on 8/4 or 8/5. WMH Estimate = $2,500 |
| 1756.08 | Repair deterioration to panels/recepticals. Awaitin estimate work did not seem too extensive from what it could have been. Going to try to come up with a cost effective solution. WMH Estimate = $25,000 |
| 1754.04 | Fire Exits. Probably need (2) sets of double doors installed with serious hardware. WMH Estimate = $5,000 |
| 1757.04 | Fire Signs/Lighting. WMH Estimate - $2,000 |

*Total without the roof is in the $90-100K range. My estimate for a new roof is probably around $200,000, which does not include the roof deck repair. Please see attached drawing of roof. I should have roofers estimate by Tuesday afternoon.*

*I will keep Jose (Greentree Landscaping) here on Monday to ge the worst rooms cleaned up. I have not scheduled any other work to be done until you give your approval. Please call to let me know.*

*Photos taken during the week of 7/27 on file with Laura Hart. Please see me to discuss photos.*

Thanks,
Bill

(as before?)

gravel, approx 1" thick

hot tar

concrete roof deck.

Water has been leaking through concrete roof deck for years. Cracks are all the way through from underneath. Water has been laying in Fiberglass layers and works it way thru concrete itself. Has seen the freeze/thaw cycle for years and is probably in need of a type of repair/reinforcing when roof is re-done.