IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 7TH & ALLEN EQUITIES, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 5:11-01567-JKG |
| v. | : | |
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

## ORDER

**AND NOW,** this ___ day of _____, 2012, upon consideration of Hartford Casualty Insurance Company's Motion in Limine to Exclude Damages Evidence Unrelated to the March 4, 2009 Event and any Damages Stemming From Plaintiff's Failure to Mitigate and any response thereto, it is hereby **ORDERED** that:

1. Plaintiff is precluded from presenting evidence of damages unrelated to the March 4, 2009 incident and any damage resulting from Plaintiff's failure to mitigate its damages, including but not limited to:

   a. Damages resulting from the second leak (Rite Aid's eviction and the building's condemnation);

   b. Damages as claimed in the A&E Budget;

   c. Damage stemming from the long standing water infiltration

   d. And any damages other than the cost ($54,499.98) that Plaintiff directly incurred to dry the insured building after the March 4, 2009 leak.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>                    Plaintiff,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>                    Defendant. | :<br>:<br>:<br>:  CIVIL ACTION NO. 5:11-01567-JKG<br>:<br>:<br>:<br>:<br>: |

## DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF MOTION IN LIMINE TO EXCLUDE DAMAGES EVIDENCE UNRELATED TO THE MARCH 4, 2009 EVENT AND DAMAGES RESULTING FROM ITS FAILURE TO MITIGATE

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby moves to exclude damages evidence unrelated to the March 4, 2009 event and/or resulting from its failure to mitigate and in support thereof incorporates herein its Brief in Support thereof as if set forth at length.

                                          BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

                                          s/Thomas S. Coleman
                                          RICHARD D. GABLE, JR., ESQ.
                                          rgable@butlerpappas.com
                                          THOMAS S. COLEMAN, ESQ.
                                          tcoleman@butlerpappas.com
                                          1818 Market Street, Suite 2740
                                          Philadelphia, PA 19103
                                          Telephone:  (215) 405-9191
                                          Facsimile:   (215) 405-9190
                                          *Attorneys for Defendant, Hartford Casualty*
Dated: <u>September 24, 2012</u>      *Insurance Company*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| 7TH & ALLEN EQUITIES, | : | |
|---|---|---|
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 5:11-01567-JKG |
| v. | : | |
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| Defendant. | : | |

## DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE DAMAGES EVIDENCE UNRELATED TO THE MARCH 4, 2009 EVENT AND/OR RESULTING FROM PLAINTIFF'S FAILURE TO MITIGATE DAMAGES

Defendant, Hartford Casualty Insurance Company ("Hartford"), by its undersigned counsel, hereby presents the following Brief in Support of its Motion in Limine to Exclude Damages Evidence Unrelated to the March 4, 2009 Event and/or any Damages Resulting From Plaintiff's Failure to Mitigate.

I.   **INTRODUCTION**

As the Court knows, Plaintiff sued Hartford over its refusal to provide coverage for a March 4, 2009 sprinkler leak (the leak or event). Hartford denied that its policy responded to the circumstances of the leak because, at the time of the leak, the insured property was mostly vacant and the sprinkler system was not protected from freezing. The remaining background of the dispute is set forth at length in other filings, and therefore, will not be repeated herein.

As set forth below, Plaintiff is now attempting to make claim through a report prepared by its accountant, Paul Martella, for damages both unrelated to the leak and/or resulting from its failure to mitigate its damages. Accordingly, Hartford respectfully

requests that the Court exclude from evidence at trial any reference to such damages as irrelevant and highly prejudicial.

## II. PLAINTIFF'S DAMAGE CLAIM MUST BE LIMITED TO THOSE DAMAGES PROXIMATELY RESULTING FROM THE LOSS *AND* NOT FROM A FAILURE TO MITIGAGE

The parties agree that on or about March 4, 2009 the building's automatic sprinkler system leaked. Assuming *arguendo* that that leak was a covered event under the Hartford policy, Plaintiff would only be entitled to recover contractual damages resulting from Hartford's failure to cover the loss. The Policy and Pennsylvania law limit Plaintiff's recovery to only those damages naturally and ordinarily related to the loss and not resulting from its failure to mitigate. Those damages would generally include: 1) the reasonable cost to repair or replace property damaged by the leak; and 2) damages incurred from the interruption to the operation of Plaintiff's business.

### (i) Pennsylvania Law Limits Damages to Those Resulting From the Loss

Plaintiff's damages recovery is limited by the law and the terms of the Hartford policy to only those damages resulting from the leak. Hartford's Policy provides in relevant part:

> [It] will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations... caused by or resulting from a Covered Cause of Loss.

Likewise, Pennsylvania law limits recovery for a breach of contract to only damages naturally resulting from the breach. Ferrer v. Trustees of University of Pennsylvania, 573 Pa. 310, 341, 825 A.2d 591, 610 (2002) (holding party may only recover damages that would naturally and ordinarily result from the breach); Robinson Protective Alarm Co. v.

2

Bolger & Picker, 512 Pa. 116, 123, 516 A.2d 299, 303 (1986) (holding loss is not recoverable on the ground of contract breach where there is no causal relationship between the breach and the loss); Exton Drive-In, Inc. v. Home Indem. Co., 436 Pa. 480, 485, 261 A.2d 319, 322 (1969) (same); Logan v. Mirror Printing Co. of Altoona, Pa., 600 A.2d 225, 448-449 (Pa.Super. 1991) ("In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss"); James Corp. v. North Allegheny School Dist., 938 A.2d 474, 497 (Pa.Cmwlth. 2007) (holding in breach of contract action a party is entitled to recover whatever damages it suffered, provided the party shows the damages were such that would naturally and ordinarily result from the breach).

### (ii) Pennsylvania Law and The Policy Required Plaintiff to Mitigate its Damages

Both the Policy and Pennsylvania law also require that Plaintiff to have mitigated its damages after the loss. In that regard, the Policy stated as follows:

> Take all reasonable steps to protect the Covered Property
> from further damage by a Covered Cause of Loss.

And black letter Pennsylvania law explicitly requires as much, and precludes recovery for damage resulting from a failure to mitigate damages. Portside Investors, L.P. v. Northern Ins. Co. of New York, 41 A.3d 1, 15 (Pa. Super. 2011) ("It is well established that a party who suffers a loss due to the breach of a contract has the duty to make reasonable efforts to mitigate his losses"); Forest City Grant Liberty Associates v. Genro II, Inc., 652 A.2d 948, 952 (Pa. Super. 1995) (reducing the plaintiff's recovery by amount of losses which could have been avoided by reasonable efforts to mitigate damages). This duty to mitigate damages prevents the breaching party from being penalized

3

beyond the extent of the damages actually suffered. Bafile v. Borough of Muncy, 527 Pa. 25, 31, 588 A.2d 462, 464 (1991) (recognizing that duty to mitigate damages prevents the injured party from being rewarded for its failure to act).

### (iii) Plaintiff Improperly Seeks to Introduce Damages Both Unrelated to the March 4, 2009 Event and Damages Resulting From a Failure to Mitigate

Plaintiff seeks to recover for "damages" entirely unrelated to the March 4, 2009 incident and/or resulting from its failure to mitigate damage, as clearly indicated by Plaintiff's expert accounting report. Attached as Exhibit "A" is a copy of that report.[1] First, that report indicates that Plaintiff is seeking to recover the cost of having the entire insured building gutted and rehabbed. Id. Second, it indicates that Plaintiff is seeking to recover business interruption damages related to the eviction of its sole tenant, Rite Aid. But, as the evidence clearly shows, neither of those two categories of damages were caused by the leak. At best, they flow from Plaintiff's failure to respond to the leak.

### (iv) The Actual Cost Plaintiff Incurred After the March 4, 2009 Leak Was $54,499.98

To dry out and clean up the building after the March 4, 2009 sprinkler leak Plaintiff incurred approximately $56,499.98 in expenses. Attached hereto as Exhibit "B" is a copy of correspondence Hartford received from Plaintiff's prior counsel to that effect. In that regard, Plaintiff's own contractor, Bill Hart (the son-in-law of Plaintiff's principal, George Diemer), testified at deposition that within a few weeks of the March 4, 2009 incident the building was 99% dried out. B. Hart Deposition Testimony attached as Exhibit "C", p. 127 lns. 23-24. Further, he testified that (in his judgment as a representative of the owner and the husband of the owner's daughter) no further work to

---

[1] The admissibility of that report is also the subject of a separate Hartford motion in limine.

dry the building was necessary or required to return the building to its prior state. Id. pp. 127-128.[2] Plaintiff's tenant, Rite Aid, confirmed Mr. Hart's assessment regarding the building's condition after the March 4th leak, testifying that the building was cleaned up and dried out after the March 4th incident. Chris Ellis Deposition Transcript attached as Exhibit "D," p. 60-61. Moreover, after a one-day water clean up the Rite Aid store returned to operation. Thus, the damages that would have been compensable under the Policy had coverage existed would be limited to $54,499.98.

### (v) Plaintiff Seeks to Recover Damages Unrelated to the March 4th Incident

As noted, the Martella Report seeks to recover damages apparently stemming from the July condemnation of the building by the City of Allentown. In support of that contention Plaintiff argued in its summary judgment filing that L. Hart's testimony linked the March 4, 2009 incident to the July incident. See Plaintiff's Summary Judgment Response to Statement of Undisputed Facts at p. 2 ¶ 7 "Laura Hart... testified that the flooding that caused the building to be closed was due to damages occurring when Kistler O'Brien was repairing the fire suppression system because of the March 4, 2009 incident." A close reading of Ms. Hart's testimony reveals, however, that she did not in fact testify that the building flooded in July due to repairs necessitated by the March 4, 2009 incident.

To the contrary, she testified that in July, "There was – the water was shut off for a time to make some repairs to the sprinkler system, and during that time the pipes were stolen. The water was turned back on and the building flooded. L. Hart Deposition

---

[2] Although Plaintiff was also presented with another, significantly more expensive proposal from its water remediation contractor to undertake further drying efforts, Mr. Hart concluded that further remediation was not warranted.

5

Transcript attached as Exhibit "E," p. 98 lns. 7-11. And tellingly, when Plaintiff filed a second claim for that theft loss, neither Ms Hart nor anyone else ever claimed that the July sprinkler repairs were necessitated by the March incident. Attached as Exhibit "F" are records to that effect submitted to Plaintiff's insurance agent, Mr. Chen (noting vandalism/theft as the cause and making no mention of a link to the March 4, 2009 leak).

Moreover, according to the Kistler O'Brien technician that repaired the sprinkler system in July, those repairs were necessitated because of a leaking sprinkler gasket in the basement, which had absolutely nothing to do with the March 4 sprinkler break. Kevin Fry Deposition Transcript attached as Exhibit "G," pp. 86-88. The two Rite Aid managers testified that they believed the July leak stemmed from a toilet leak on the second floor. Exhibit "D" and "H" at pp. 62 and 90, respectively. And the City inspector thought the roof had simply leaked again and caused the flooding. Attached as Exhibit "I" is Patrick Roels Deposition Transcript at p. 77-78. Needless to say, no one ever said or believed, let alone testified, that the new July leak was in any way related or relatable back to the March 4, 2009 leak. Thus, any damage stemming from the leak and the following condemnation should be excluded from evidence.

Finally, to the extent that Plaintiff argues that Rite Aid was forced to vacate the building because the damages from the March 4th incident were not properly cleaned up, any such alleged damage would be the direct result of Plaintiff's failure to mitigate it loss from the March 4th incident, and therefore, excluded from evidence on that basis. See supra § II. (ii)(setting forth the requirements that Plaintiff mitigate its damages).

6

## V. Conclusion

Plaintiff's building suffered water damage due to a sprinkler rupturing on March 4, 2009. Plaintiff cleaned up the resulting water damage at a cost of $54,499.98 and operated the building for the next four months, at which time a second water leak occurred. Plaintiff's building was shut down after the second leak.

At trial it is paramount that Plaintiff be precluded from conflating the damages arising from the long term water infiltration and the second July event with the damage suffered as a direct result of the March 4th incident. Moreover, to the extent any damages from the March 4, 2009 event were not cleaned up prior to the second leak, it was indisputably due to the Plaintiff's failure to take appropriate steps to mitigate damages.

WHEREFORE, Hartford Casualty Insurance Company respectfully requests that Plaintiff be precluded from introducing evidence or testimony on damages, except the $54,499.98 cost expended to repair the building after the March 4th 2009 leak, which include, but are not limited to: 1) costs stemming from the building condemnation, the loss of Rite Aid as a tenant, and damage attributable to the second leak and long standing water infiltration.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

s/Thomas S. Coleman
RICHARD D.GABLE, JR., ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA 19103

Telephone: (215) 405-9191
Facsimile: (215) 405-9190
*Attorneys for Defendant, Hartford Casualty Insurance Company*

Dated: September 24, 2012

## CERTIFICATE OF SERVICE

I, Thomas S. Coleman, hereby certify that, on this 24th day of September, 2012 a true and correct copy of Defendant's Motion in Limine to Exclude/Limit Plaintiff's Damage Claim to Evidence Linked to the March 4, 2009 Event and Memorandum of Law in Support thereof has been served on the following counsel of record via the Court's Electronic filing system:

> Mark S. Kancher, Esquire
> The Kancher Law Firm, LLC
> Grove Professional Center
> 100 Grove Street
> Haddonfield, NJ 08033
>
> Mark S. Haltzman, Esq.
> Silverang & Donohoe, LLC
> 595 East Lancaster Avenue, Ste. 203
> St. Davids, PA 19087
>
> *Attorneys for the Plaintiff*

> BUTLER PAPPAS WEIHMULLER
> KATZ & CRAIG, LLP
>
> By: __s/Thomas Coleman__
> Thomas S. Coleman, Esquire
> 1818 Market Street
> Suite 2740
> Philadelphia, PA 19103
> (215) 405-9191
> *Attorneys for Defendant,*
> *Hartford Casualty Insurance Company*