



TAMPA
CHICAGO
CHARLOTTE
PHILADELPHIA
TALLAHASSEE
MOBILE
MIAMI

September 25, 2012

The Honorable Henry S. Perkin
United States District Court for the Eastern District of PA
Edward N. Cahn Courthouse & Federal Building
504 W. Hamilton Street, Suite 4401
Allentown, PA 18101

**FILED**

OCT - 4 2012

MICHAEL E. KUNZ, Clerk
By_____ Dep. Cl

Re: 7th & Allen Equities v. Hartford Casualty Insurance Company
USDC for the Eastern District of PA, No. 5:11-cv-01567
Our File Number: 1758-1204068

Dear Judge Perkin:

  The undersigned represents Hartford Casualty Insurance Company in the above-captioned matter. We write to advise Your Honor regarding a discovery dispute between the two parties.

  This matter involves a claim over water damage to a commercial building from a sprinkler leak. Despite the fact that the water damage was repaired and Plaintiff's tenant only out of the building for one day as the result of the damage, Plaintiff is nevertheless seeking the cost to completely rebuild the building in its damage claim. In the hope of narrowing the issues for trial, Hartford served several Contention Interrogatories on Plaintiff back on July 6, 2012. (See Exhibit A). In particular, Hartford asked whether Plaintiff was contending that it could not afford to perform water damage repairs absent funds from the insurance company. It is important to note in this regard that Plaintiff is a Limited Liability Company, the sole purpose of which is to own, operate and maintain the building. There has been testimony in the case that if the entity needed funds to complete repairs, it needed capital contributions from its two principals, George Diemer and Craig Rohner. (See Diemer deposition testimony, p.66 ln. 19 through p. 67 ln. 18, attached hereto as Exhibit B).

  Just last week, Plaintiff served its responses. (See Exhibit C). While Plaintiff concedes that it intends to argue that it could not afford repairs, it refuses to provide the requested financial information of its principal. Plaintiff's refusal to provide the financial information of its principals is unfounded. This information is clearly discoverable. Without this information, Hartford has no way to test the veracity of Plaintiff's claim that it could not afford to make immediate repairs following the leak of March 4, 2009 which is the apparent

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

t 215.405.9191 f 215.405.9190 1818 Market Street / Suite 2740 / Philadelphia / Pennsylvania / 19103
www.butlerpappas.com



The Honorable Henry S. Perkin
September 25, 2012
Page 2

lynchpin to its claim for the cost to rebuild the entire structure. Accordingly, it is patently unfair to allow Plaintiff to contend it lacked funds to make the repairs to the building after the complained-of leak, yet prevent Hartford from verifying that claim by a review of the LLC's principals' financial condition.

We will be before Your Honor on Thursday for a settlement conference. We welcome the opportunity to discuss this issue in more detail at the conference or any other time convenient to the Court.

Respectfully submitted,

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

Thomas S. Coleman
Of Counsel
tcoleman@butlerpappas.com

TSC:ab

cc:   Mark S. Kancher, Esq.

Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES,<br><br>               Plaintiff,<br><br>v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY,<br><br>               Defendant. | :<br>:<br>:<br>:  CIVIL ACTION NO. 5:11-01567-JKG<br>:<br>:<br>:<br>:<br>:<br>: |

## HARTFORD CASUALTY INSURANCE COMPANY'S FIRST SET OF CONTENTION INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS ADDRESSED TO PLAINTIFF

Defendant, Hartford Casualty Insurance Company ("Hartford"), by and through its undersigned attorneys, hereby requests that Plaintiff 7th & Allen Equities ("Plaintiff") answers the following contention interrogatories and requests for production of documents within thirty (30) days of service.

1. Do you contend that you could not afford the cost to repair the damage caused by the March 4, 2009 sprinkler leak immediately following its occurrence? If so, please provide copies of the last five (5) years personal income tax returns of the principals of Plaintiff as well as March 2009 statements of account or any bank, investment or savings account held in the name of or in trust for any of the principals of Plaintiff.

**ANSWER:**

2. Do you contend Hartford improperly denied your claim for damage resulting from your July 2009 theft/vandalism claim at the insured property and, if so, please set forth your basis for such contention.

**ANSWER:**

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

_____
RICHARD D. GABLE, ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA  19103
Telephone:   (215) 405-9191
Facsimile:   (215) 405-9190
*Attorneys for Defendant, Hartford Casualty Insurance Company*

July 6, 2012

## CERTIFICATE OF SERVICE

I, Richard D. Gable, Jr., hereby certify that, on this 6th day of July, 2012 a true and correct copy of Defendant' First Set of Contention Interrogatories and Requests for Production of Documents Addressed to Plaintiff has been served on the following counsel of record via U.S. First-Class Mail, postage prepaid:

>Mark S. Kancher, Esquire
>The Kancher Law Firm, L.L.C.
>Grove Professional Center
>100 Grove Street
>Haddonfield, NJ  08033
>*Attorney for the Plaintiff*

_____
RICHARD D. GABLE, JR., ESQ.

Exhibit B

Page 66

1  D-12 -- the second is the July 20th is a series of
2  code violations. Do you also recall getting that
3  document?
4     A. Yes.
5     Q. Did that also come after the second event?
6     A. Yes.
7     Q. And who is S. David Fineman?
8     A. He was an attorney that was representing
9  me at the time.
10    Q. Okay. And is it your understanding that these
11 were the code violations in regard to the second
12 incident?
13    A. I don't remember them that way. Frankly,
14 I don't remember the first incident, second
15 incident. It was all sort of one as far as I'm
16 concerned, but the way you're phrasing it. Well, I
17 mean you can -- you can see for yourself from the
18 dates that it's after the second incident.
19    Q. Were the issues in the second, when I say --
20 let's put it this way, in the July 20th list of code
21 violations, were they addressed by 7th and Allen
22 Equities to the satisfaction of the Town of
23 Allentown?
24    A. No.

Page 67

1     Q. And why not?
2     A. Well, the primary, I guess there was a lot
3  of reasons. The primary reason was we couldn't
4  collect money from the insurance company.
5     Q. Okay. Did you not have the money available to
6  do the repairs?
7     A. Well, 7th and Allen Equities was a single
8  purpose LLC. The only thing it did was own this.
9  It had no funds.
10    Q. How did it get funds?
11    A. We had to rely on capital contributions,
12 Craig Rohner and I.
13    Q. Did you and Craig Rohner have sufficient funds?
14    A. We didn't have five million dollars
15 available. No, we didn't have money available to
16 restore the building. We didn't have money
17 available to accomplish that absent the insurance
18 company paying us, no.
19    Q. What did you understand the scope of repair
20 that was necessary to fix the water damage from the
21 March 4th, 2009 loss? I don't mean now, back then
22 what did you understand you had to do?
23    A. We never could get a complete grip on it,
24 on all of what was going to be entailed because it

Page 68

1  just seemed to keep going on and on. The longer
2  that we couldn't do the repairs, it seems to be
3  getting worse almost to this day to some extent,
4  but -- can you just read back the question to me
5  again? I may have already answered it.
6  
7                    * * *
8     (Whereupon, the court reporter read back
9     the pending question.)
10                   * * *
11 
12    THE WITNESS: I couldn't get a grip on
13 that.
14 BY MR. GABLE:
15    Q. Why couldn't you get a grip on it?
16    A. We couldn't get any single purpose -- any
17 single company to give us a complete total estimate
18 of what it was going to do to restore the building
19 after the first loss. Which again, the first loss
20 and the second loss to me were all the same.
21    Q. Well, as to the -- as to the first loss, what
22 companies did you engage to go out and assess the
23 damage that was caused by that event?
24    A. Well, my son-in-law took the lead on it

Page 69

1  and he used all the resources he had to try to get
2  us estimates. Craig Rohner was in the construction
3  industry and he tried to play an active role in it,
4  but I went out and looked at the building and did
5  the best I could, but we couldn't get a complete
6  estimate. And as we were trying to go through that,
7  it almost seemed like it was getting worse because
8  it was sitting and we just couldn't get an estimate
9  on what it was going to cost to restore the
10 building.
11    Q. What efforts did you take to try to get an
12 estimate of what it would take?
13    A. I think my son-in-law was there every day,
14 Craig Rohner was there, he was involved in trying to
15 help trying to put something, an estimate. I was
16 trying to put together an estimate. We had three to
17 four pretty talented people, as good as a talent, we
18 couldn't do it, get together an estimate.
19    Q. Other than yourself, Mr. Rohner and your
20 son-in-law, anybody else that you engaged to assist
21 with that process of trying to develop a scope of
22 repair from the March 4th, 2009 water leak incident?
23    A. The answer to it is yes, I can't tell you
24 exactly who because I don't remember exactly who

Exhibit
C

**THE KANCHER LAW FIRM, L.L.C**
By: Mark S. Kancher, Esquire
I.D. No. MK4461
Grove Professional Center
100 Grove Street
Haddonfield, NJ 08033
Tel: (856) 795-2440   Fax: (856) 795-4824
MKANCHER@KANCHERLAWFIRM.COM
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 7TH & ALLEN EQUITIES | : | CIVIL ACTION |
| Plaintiff | : | No.: 5:11-cv-01567-JKG |
| vs. | : | |
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| Defendant | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
FIRST SET OF CONTENTION INTERROGATORIES AND REQUEST FOR
PRODUCTION OF DOCUMENTS**

To:   Richard D. Gable, Esquire
      Thomas S. Coleman, Esquire
      BUTLER PAPPAS
      1818 Market Street, Suite 2740
      Philadelphia, PA 19103
      Attorneys for Defendant Hartford Casualty Insurance Company

Plaintiff, 7TH & Allen Equities, hereby provides the following Answers and Objections to Defendant, Hartford Insurance Company's First Set of Contention Interrogatories and Requests for Production of Documents Addressed to Plaintiff:

## GENERAL OBJECTIONS

1. The Answering Plaintiff objects to any Interrogatory which requests and/or requires the disclosure of any privileged communications between the Plaintiff and their attorneys.

2. The Answering Plaintiff hereby objects to any Interrogatory, which requests and/or requires answers that are beyond the permissible scope of discovery.

3. The Answering Plaintiff hereby objects to all Interrogatories which seek documents and tangible things prepared in anticipation of litigation or trial by the Plaintiff and the Plaintiff's representatives, including their attorney, consultant, surety, indemnitor, insurer or agent, except upon Defendant showing that they have substantial need for any such materials and are unable, without undue hardship, to obtain its substantial equivalent by other means, excluding therefrom disclosure of any mental impressions, conclusions, opinions, or legal theories of an attorney or a representative of the Plaintiff concerning this litigation.

4. The Answering Plaintiff hereby objects to any Interrogatories, which require and/or request facts known and opinions held by experts except those specifically permitted by the Federal Rules.

5. The Answering Plaintiff hereby objects to any Interrogatories, which request and/or require disclosure of any proprietary information and/or trade secrets in the absence of a properly drawn protective order approved by this Court.

## PLAINTIFF'S ANSWERS

1. Yes. Plaintiffs object to the Request for Production of the Income Tax Return of the principals of 7th & Allen Equities as the principals are not parties to this litigation and these requests constitute harassment and would not lead to any discoverable evidence.

2. Yes. See Brief of Hartford Insurance Company on its Motion for Summary Judgment.