**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| 7TH & ALLEN EQUITIES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 5:11-01567-JKG |
| v. | : | |
| | : | |
| HARTFORD CASUALTY INSURANCE COMPANY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S
REQUESTED SUPPLEMENTAL JURY INSTRUCTIONS**

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

s/ Thomas S. Coleman
RICHARD D. GABLE, ESQ.
rgable@butlerpappas.com
THOMAS S. COLEMAN, ESQ.
tcoleman@butlerpappas.com
1818 Market Street, Suite 2740
Philadelphia, PA  19103
Telephone:     (215) 405-9191
Facsimile:     (215) 405-9190
*Attorneys for Defendant, Hartford Casualty Insurance Company*

Dated:  October 22, 2012

1.      Neither sympathy nor prejudice can play any part in your reaching a verdict in this case.  Sympathy for plaintiff cannot justify your finding.[1]

---

[1] Gift v. Palmer, 392 Pa. 628, 141 A.2d 408 (1958); Wasillo v. Szeles, 310 Pa. 337, 165 A. 377 (1933).

2.      Plaintiff, 7th and Allen Equities claims that Hartford Casualty Insurance Company breached the contract of insurance by failing to pay its damages arising out of the March 4, 2009 sprinkler leak.[2]

---
[2] Plaintiff's First Amended Complaint.

 3. In determining the existence of coverage under the policy of insurance, you must first determine whether the building at 602 N. Allen Street was "vacant" as that term is defined under the policy.  In that regard, a building shall be considered vacant unless at least 31% of its total square footage is rented to a lessee or sub-lessee.[3]

---

[3] Hartford Policy

4.      If the building is determined to have been vacant, you must determine the cause of any property damage, i.e., vandalism, water damage or sprinkler leakage. Plaintiff cannot recover for any damage caused or resulting from vandalism or water damage.  If you determine that the cause of any property damage was sprinkler leakage, you must then also determine whether the Plaintiff protected the sprinkler system against freezing. The Plaintiff bears the burden of proof regarding whether the sprinkler system was protected against freezing.[4]

[4] TIG Specialty Ins. Co. v. Koken, 855 A.2d 900, 915 (Pa. Commw. 2004); Air Products & Chemicals, Inc. v. Hartford Accident & Indemnity Co., 25 F.3d 177, 180 (3d Cir. 1994).

5.      *To the extent that you determine that any property damage was caused by freezing and that Plaintiff has proven by a preponderance of the evidence that it adequately protected the sprinkler system from freezing*, then you must decide, based on the evidence the Plaintiff has presented, the amount of money damages that will compensate the plaintiff for its loss as a result of the breach *of the insurance contract*. Your aim in calculating this amount should be to put the plaintiff, as nearly as possible, in the same position it would have occupied had the contract been performed. [5]

---

[5] Pa. S.S.C.J.I. §19.270 (Civ)

6.      In determining the amount of damages owed, if any, you should next determine the amount of physical loss or damage caused by the March 4, 2009 sprinkler leak.  In this regard, you are instructed that the Policy only pays for the cost of repairing the property physically lost or damaged as the result of the leak.[6]

---

[6] Hartford Policy, Special Property Coverage Form.

7.      In this case, Plaintiff also seeks to recover damages for business income loss under the policy of insurance issued to it Hartford.

The Business Income coverage of the Policy states:  "We will pay the actual loss of business income you sustain due to the necessary suspension of your operations during the period of restoration.  The suspension must be caused by direct physical loss of or physical damage to property at the scheduled premises caused by or resulting from a Covered Cause of Loss."[7]

---

[7] Hartford Policy, Special Property Coverage Form, para. A.5.o.

8.     The essential nature and purpose of Business Income insurance is to protect the earnings which the insured would have enjoyed had there been no suspension of operations. Generally, business income insurance is intended to return to the insured the amount of profit it would have earned had the event insured against not intervened.  In other words, the purpose of business income insurance is to do for the business what the business would have done for itself had no suspension occurred.  Business income insurance may not be used to put the insured in a better position than it would have occupied without the suspension of operations.[8]

---

[8] See 12 Couch on Ins., §185:1 (2007) (citing Northwestern States Portland Cement Co. v. Hartford Fire Ins. Co., 360 F.2d 531 (8th Cir. 1966).); Berkeley Inn, Inc. v. Centennial Ins. Co., 282 Pa. Super. 207, 211 (1980) (citing Supermarkets Operating Co. v. Arkwright Mut. Ins. Co., 257 F. Supp. 273, 277 (E.D.Pa. 1966).).

9.      In this case, Plaintiff contends that it suffered a business income loss in an amount
of _____.   In order to prove an entitlement to business income coverage, Plaintiff must
prove:

      a.      that it sustained damage to property that is covered under the policy and
that the damage was caused by a covered cause of loss;

      b.      that there was an interruption to the business ("suspension of operations")
which was both necessary and was caused by the property damage; and

      c.      that there was an actual loss of income during the period of time
reasonably necessary to repair the insured damage to the building and that
the loss of income was caused by insured damage to the building and not
some other damage, factor or event.[9]

Plaintiff has the burden of proof on all of these issues.

In regard to the terms used in the insurance policy, you are to use the following
definitions.

"Business Income" means:

      a.      Net income (net profit or loss before income taxes) that would have been
earned had no physical loss occurred; and

      b.      Continued normal operating expenses incurred, including payroll.

---

[9] Hartford Policy, Special Property Coverage Form, para. A.5.o; Dictiomatic, Inc. v. United
States Fid. & Guar. Co., 958 F. Supp. 594, 602 (D. Fla. 1997) (citing Supermarket Operating
Co., supra, 257 F. Supp. at 277); Berkeley Inn, Inc., supra, 282 Pa. Super. 207 (1980)).

10.     In order to recover, Plaintiff must prove that its business income loss, if any, was caused by the covered property damage.  In other words, covered damage from the sprinkler leak of March 4, 2009 must have caused the suspension of operations and the resulting monetary loss. For example, if there is direct physical damage to property but the loss of business income is caused by another factor (and not the property damage) the loss is not covered under the Business Income section of the policy.[10]

---

[10] <u>Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Co.</u>, 486 S.E.2d 249 (N.C. Ct. App. 1997).

11.     The period of time that an insured is entitled to payment of its loss of business income under the Business Income coverage is referred to as the "period of restoration."  The "period of restoration" begins on March 4, 2009 and ends when the damage caused by the sprinkler leak of March 4, 2009 should have been repaired with reasonable speed and similar quality.[11]

---

[11] Hartford Policy, Special Property Coverage Form, para. G.12.

12.     As the policy states, the period of restoration is the theoretical period from the time of the loss to the time, with due diligence and dispatch, the damaged property should be repaired and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the loss.  Therefore any losses outside the period of restoration are not recoverable.[12]

---

[12] <u>Beautytuft, Inc. v. Factory Ins. Assn.</u>, 431 F.2d 1122, 1124-5 (6th Cir. 1970).

13.     *Hartford alleges that plaintiff could have minimized or eliminated its claimed damages if it had repaired the water damage promptly.*   It is the duty of any person who has been injured to use reasonable diligence and reasonable means under the circumstances, in order to prevent the aggravation of such injuries and to effect a recovery from such injuries.

Any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages. The law imposes on an injured person the duty to take advantage of reasonable opportunities he may have to prevent the aggravation of his injuries, so as to reduce or minimize the loss or damage.

If you find *Hartford* is liable and that Plaintiff has suffered damages, Plaintiff may not recover for any item of damage it could have avoided through such reasonable effort. If Plaintiff unreasonably failed to take advantage of an opportunity to lessen its damages, you should deny recovery for those damages which it would have avoided had it taken advantage of the opportunity.

Bear in mind that the question whether Plaintiff acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert himself unreasonably or incur unreasonable expense in an effort to mitigate, and it is defendant's burden of proving that the damages reasonably could have been avoided. In deciding whether to reduce Plaintiff's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the

particular circumstances of the case, using sound discretion in deciding whether *Hartfor*d has

satisfied his burden of proving that the Plaintiff's conduct was not reasonable.[13]

---

[13] 4-76 Modern Federal Jury Instructions-Civil P. 77.07, Modern Federal Jury Instructions-Civil, Copyright 2008, Matthew Bender & Company, Inc., a member of the LexisNexis Group; see also 3 Fed. Jury Prac. & Instr. § 128.50 (6th ed).

14.     Damages must be reasonable.  Plaintiff, 7th and Allen is not entitled to an award of damages unless both the fact of damage and the amount of damage are established with reasonable certainty, and neither may be based on mere speculation, guess or conjecture.[14]

---

[14] <u>Bigelow v. Rico Radio Pictures, Inc.</u>, 327 U.S. 251 (1947)

15.    In this case, Plaintiff, 7th and Allen has asserted a right to additional damages based on the alleged bad faith conduct of Hartford.

Pennsylvania's Bad Faith Statute (42 Pa.C.S.A. §8371) provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:
>
> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)    Award punitive damages against the insurer.
>
> (3)    Assess court costs and attorney fees against the insurer.

In order to recover bad faith damages, plaintiff, 7th and Allen must, by clear and convincing evidence show that Hartford (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in refusing to provide coverage for 7th and Allen's claim.  Further, 7th and Allen must prove that Hartford's refusal to pay benefits under the policy was frivolous or unfounded and that Hartford had a motive of self-interest or ill will (i.e. dishonest purpose).  Mere negligence or bad judgment is not bad faith.[15]

---

[15] <u>Post v. St. Paul Travelers</u>, 691 F.3d 500 (3d Cir. 2012); <u>Klinger v. State Farm Mut. Auto Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997); <u>Bonenberger v. Nationwide Mut. Ins. Co.</u>, 791 A.2d 378, 381 (2002); <u>Terletsky v. Prudential Pro. & Cas. Ins. Co.</u>, 437 Pa. Super. 108, 649 A.2d 680 (Pa. 1994); <u>Livornese v. Medical Protective Co.</u>, 219 F. Supp 2d 645, 647-648 (E.D. Pa. 2002); <u>Greene v. United States Automobile Association</u>, 936 A.2d 1178, 1188-89 (Pa. Super. 2007) (citing to <u>Condio v. Erie Insurance Exchange</u>, 899 A.2d 1136, 1142 (Pa.Super. 2006). ).

16.     Based on the evidence in this case, you cannot find Defendant Hartford Casualty Insurance Company acted in bad faith because it incorrectly interpreted its policy, so long as its interpretation of the policy was reasonable.[16]

---

[16] <u>Post v. St. Paul Travelers</u>, 691 F.3d 500 (3d Cir. 2012); <u>Klinger v. State Farm Mut. Auto Ins. Co</u>., 115 F.3d 230, 233 (3d Cir. 1997); <u>Bonenberger v. Nationwide Mut. Ins. Co</u>., 791 A.2d 378, 381 (2002); <u>Terletsky v. Prudential Pro. & Cas. Ins. Co.,</u> 437 Pa. Super. 108, 649 A.2d 680 (Pa. 1994); <u>Livornese v. Medical Protective Co.,</u> 219 F. Supp 2d 645, 647-648 (E.D. Pa. 2002); <u>Greene v. United States Automobile Association</u>, 936 A.2d 1178, 1188-89 (Pa. Super. 2007) (citing to <u>Condio v. Erie Insurance Exchange</u>, 899 A.2d 1136, 1142 (Pa.Super. 2006). ).

17.     *As with its claim for damages under the terms of the insurance policy, Plaintiff, 7th and Allen, carries the burden of proving bad faith conduct on the part of Hartford.  As I instructed you previously, the burden of proof that 7th and Allen must carry in the coverage case is preponderance of the evidence.  However, the standard of proof in a bad faith case is clear and convincing evidence.  If you conclude that 7th and Allen has failed to establish its bad faith claim by clear and convincing evidence, you must find against Plaintiff on that claim.*

*What does "clear and convincing evidence" mean?* Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true.  Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard.  But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.[17]

---

[17] 3rd Circuit General Instructions for Civil Cases 1.11.

18.     In order to meet its burden in the bad faith case, Plaintiff, 7th and Allen must prove that the conduct of Hartford was more than merely negligent or an exercise of bad judgment.  The mere calling of the actions of Hartford "frivilous", "outrageous", or "outlandish" is not sufficient because 7th and Allen has the burden to provide clear and convincing evidence that the conduct of Hartford imports a dishonest purpose through some motive of self-interest or ill will.[18]

---

[18] <u>TJS Brokerage & Co., Inc. v. Hartford Cas. Ins. Co.</u>, 2002 WL 1803717 (Pa. Com Pl. July 26, 2002) <u>supra</u> at 2 (quoting <u>Terletsky, supra</u> at 124-25); <u>Post v. St. Paul Travelers</u>, 691 F.3d 500 (3d Cir. 2012)

19.     An insurer does not act in bad faith merely by investigating or litigating legitimate issues of coverage.[19]

---

[19] <u>Hyde Athletic Ind. v. Continental Cas. Co.</u>, 969 F.Supp. 289 (E.D.Pa. 1997); <u>J.C.Penney Life Ins. Co. v. Pilosi</u>, 393 F.3d 356 (3d Cir. 2004).

20.     *If you should find by clear and convincing evidence that Hartford is liable for bad faith, then you have the discretion to award punitive damages as claimed by plaintiff, 7th and Allen.*  In addition to actual damages, a jury may, under certain circumstances, award an injured person punitive and exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

If you find from a preponderance of the evidence in the case plaintiff is entitled to a verdict for actual or compensatory damages, and you further find that the act or omission of defendant proximately causing actual injury or damage to plaintiff was maliciously, or wantonly, or oppressively done, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper as punitive and exemplary damages.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member.

An act or a failure to act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.

An act or a failure to act is "oppressively" done, if done in a way or manner that injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

Whether or not to make any award of punitive and exemplary damages, in addition to actual damages, is a matter exclusively within the province of the jury, if you unanimously find, from a preponderance of the evidence in the case, that defendant's act or omission, which

proximately caused actual damage to plaintiff was maliciously or wantonly or oppressively done. You should always bear in mind such extraordinary damages may be allowed only if you should first unanimously award plaintiff a verdict for actual or compensatory damages.

You should also bear in mind, not only the conditions under which and the purposes for which the law permits an award of punitive and exemplary damages to be made, but also the requirement of the law that the amount of such extraordinary damages, when awarded, must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount because of any sympathy, or bias, or prejudice with respect to any party to the case.[20]

---

[20] 3 Fed. Jury Prac. & Instr. § 123.40 (6th ed).

21.     A finding of bad faith does not compel an award of punitive damages.[21]

---

[21] <u>Hollock v. Erie Ins. Exchange</u>, 842 A.2d 409, 419 (Pa. Super. 2004).

22.     I have concluded it would be helpful for you to view *the building located at 602 N. 7th Street.*  You will go with the bailiffs and we will reconvene at *[time]*.

While you are at the scene please do not ask any questions of the lawyers or of the people who may be there. If you have questions, direct them to me.

Do not discuss the case with anyone, even the other jurors, while going to or from the location or at the location.[22]

---

[22] 3 Fed. Jury Prac. & Instr. § 102:26 (6th ed.)

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the witness' ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.[23]

---

[23] 3 Fed. Jury Prac. & Instr. § 105:01 (6th ed.)