<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

7TH & ALLEN EQUITIES,      )
                        )  Civil Action
          Plaintiff   )  No. 11-cv-01567
                        )
        vs.           )
                        )
HARTFORD CASUALTY INSURANCE  )
  COMPANY,              )
                        )
        Defendants  )

*     *     *

APPEARANCES:

      Mark S. Haltzman, Esquire, and
      Mark S. Kancher, Esquire
          On behalf of Plaintiff

      Michael J. O'Neill, Esquire
      Richard D. Gable, Jr., Esquire, and
      Thomas S. Coleman, Esquire
          On behalf of Defendant

*     *     *

<u>O P I N I O N</u>

JAMES KNOLL GARDNER,
United States District Judge

      This matter is before the court on Defendant Hartford Casualty Insurance Company's Notice of Motion for Summary Judgment Pursuant to F.R.C.P. 56, which motion was filed July 24, 2012.[1]  On August 13, 2012 Plaintiff 7th & Allen Equities' Notice

---

[1]   Defendant's motion for summary judgment was accompanied by the following documents:

        (1)  Defendant Hartford Casualty Insurance Company's Brief in Support of Its Motion for Summary Judgment;

        (2)  Statement of Undisputed Facts in Support of Defendant Hartford's Motion for Summary Judgment; and

                                 <u>(Footnote 1 continued)</u>:

of Cross-Motion for Partial Summary Judgment as to Liability was filed.[2]  By Order dated August 21, 2012 and filed August 22, 2012 I dismissed plaintiff's cross-motion for summary judgment as untimely.[3]  However, I indicated that I would consider plaintiff's cross-motion as a response in opposition to defendant's motion for summary judgment.

On September 18, 2012 the Reply Brief of Defendant Hartford Casualty Insurance Company was filed.  On October 12, 2012 plaintiff filed a sur-reply brief.[4]

I held oral argument on October 31, 2012 and took the matter under advisement.  Hence this Opinion.

────────────

(Continuation of footnote 1):

> (3)   Exhibits "A" through "S" in support of defendant's motion for summary judgment.

[2]   Plaintiff's response and cross-motion for summary judgment was accompanied by the following documents:

> (1)   Plaintiff's Response to the Statement of Alleged Uncontested Facts Proffered by the Defendant in Support of its Motion for Summary Judgment;
>
> (2)   Plaintiff's Counter-Statement of Undisputed Material Facts;
>
> (3)   Brief of Plaintiff in Opposition to the Motion of the Defendant for Summary Judgment and in Support of its Motion for Partial Summary Judgment; and
>
> (4)   Plaintiff's Appendix of Exhibits to Response to Motion for Summary Judgment and Cross-Motion for Summary Judgment, Exhibit 1 through Exhibit 16.

[3]   Pursuant to my Order dated and filed June 20, 2012, the parties had until July 24, 2012 to file any dispositive motion, including motions for summary judgment.

[4]   The sur-reply brief was titled Plaintiff, 7th & Allen Equities', Sur Reply Brief to Reply Brief of Defendant, Hartford Casualty Insurance Company, to the Opposition to Defendant's Motion for Summary Judgment.

For the following reasons, I dismiss in part as moot and deny in part defendant's motion for summary judgment. Specifically, at the oral argument on October 31, 2012 counsel for plaintiff, Mark S. Haltzman, Esquire, orally withdrew on the record all liability and damages claims of plaintiff regarding the flooding of plaintiff's property on July 7, 2009.  Therefore, I dismiss as moot defendant's motion for summary judgment to the extent it contends that the loss resulting from the flooding of plaintiff's property on July 7, 2009 is not covered by the insurance policy issued by defendant to plaintiff.  However, defendant's motion for summary judgment is denied in all other respects.

<u>JURISDICTION</u>

This action is properly before the court on diversity jurisdiction.  Plaintiff 7th & Allen Equities is a limited partnership with two members.  George M. Diemer is a citizen of Florida.  Craig Rohner is a citizen of New Jersey.  Defendant Hartford Casualty Insurance Company is an Indiana corporation with its principal place of business in Hartford, Connecticut. The amount in controversy is in excess of $75,000.  <u>See</u> 28 U.S.C. § 1332.

VENUE

Venue is proper because plaintiff alleges that a substantial portion of the events giving rise to this claim occurred in this judicial district.  28 U.S.C. § 1391.

PROCEDURAL HISTORY

This case arises from a leak to a sprinkler system in plaintiff's commercial property located at 602-618 North Seventh Street, Allentown, Lehigh County, Pennsylvania, and defendant's refusal to pay plaintiff's claim for insurance benefits for the damages resulting from the sprinkler leak.

On March 4, 2011 plaintiff filed a Complaint against defendant.  On June 3, 2011 plaintiff filed its First Amended Complaint to adequately plead subject matter jurisdiction based on diversity of citizenship.

The amended complaint asserts a claim for Declaratory Judgment (Count I); Breach of Contract (Count II); and Bad Faith (Count III).  On July 24, 2012, after the completion of discovery,  defendant filed the within motion for summary judgment.

STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of

-4-

material fact and that the moving party is entitled to judgment
as a matter of law."  Fed.R.Civ.P. 56(c); Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
Federal Home Loan Mortgage Corporation v. Scottsdale Insurance
Company, 316 F.3d 431, 433 (3d Cir. 2003).  Only facts that may
affect the outcome of a case are "material".  Moreover, all
reasonable inferences from the record are drawn in favor of the
non-movant.  Anderson, supra.

        Although the movant has the initial burden of demon-
strating the absence of genuine issues of material fact, the
non-movant must then establish the existence of each element on
which it bears the burden of proof.  See Watson v. Eastman Kodak
Co., 235 F.3d 851, 858 (3d Cir. 2000).  Plaintiff cannot avert
summary judgment with speculation or by resting on the
allegations in his pleadings, but rather he must present
competent evidence from which a jury could reasonably find in his
favor.  Ridgewood Board of Education v. N.E. for M.E.,
172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen,
889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

FACTS

        Upon consideration of the pleadings, record papers,
exhibits, affidavits, and depositions, and drawing all reasonable
inferences in favor of plaintiffs as required by the forgoing
standard of review, the pertinent facts are as follows.

Plaintiff 7th & Allen Equities is a limited partnership, which owns commercial property located at 602-618 North 7th Street, Allentown, Lehigh County, Pennsylvania ("Property").  Defendant Hartford Casualty Insurance Company issued a Special Property Coverage Form insurance policy ("Policy") to plaintiff for the period of December 29, 2008 through December 29, 2009.

Pursuant to the terms of the Policy, defendant agreed to "pay for covered physical loss or physical damage" to the Property.  However, the Policy limited coverage for property that was vacant.  Specifically, the Policy provided that:

> If the building where the physical loss or physical damage occurs has been vacant for more than 60 consecutive days before that physical loss or physical damage occurs:
>
> (1)  We will not pay for any physical loss or physical damage caused by any of the following even if they are Covered Causes of Loss:
>
>      (a)  Vandalism;
>      (b)  Sprinkler leakage, unless you had protected the system against freezing;
>      (c)  Building glass breakage;
>      (d)  Water damage;
>      (e)  Theft; or
>      (f)  Attempted theft.[5]

The Policy defines a building as "vacant unless at least 31% of its total square footage is (i) Rented to a lessee

---

[5]     Defense Exhibit A, Policy, pages 22-23.

or sublessee and used by the lessee or sub-lessee to conduct its customary operations; and/or (ii) Used by the building owner to conduct customary operations."[6]

Here, the Property consists of three main floors and a basement.  Each floor covers approximately 22,000 square feet, making the entire square footage of the Property 88,000 square feet.[7]

Plaintiff purchased the Property in 1989.  Between 1990 and the early 2000's plaintiff leased each of the three floors and the basement to various tenants at various times.  However, after the early 2000's only the first floor was occupied by a commercial tenant.[8]

During the period of time plaintiff was insured by defendant, plaintiff leased 15% of the Property's space (14,000 square feet) to Rite Aid pharmacy.  Rite Aid occupied a portion of the first floor of the Property.  The remainder of the Property was unleased.  However, plaintiff continuously attempted to lease the unleased portions of the Property.[9]

_____

[6]     Defense Exhibit A, Policy, pages 22-23.

[7]     Statement of Undisputed Facts in Support of Defendant Hartford's Motion for Summary Judgment ("Defendant's Undisputed Facts"),  ¶¶ 15-16.

[8]     See Defense Exhibit F, Notes of Testimony of the June 1, 2012 Deposition of George M. Diemer ("Diemer N.T.") at pages 10-18.

[9]     Plaintiff's Counter-Statement of Undisputed Material Facts ("Plaintiff's Undisputed Facts"), ¶ 11; Defendant's Undisputed Facts, ¶¶ 16 and 17.

Rite Aid was responsible for paying for gas and electric services, which included heating and lighting expenses. However, plaintiff did not independently heat the second or third floor.[10]

Even without independent heating, prior to March 4, 2009 no sprinkler or plumbing system on the second or third floor of the Property had frozen.  Accordingly, plaintiff believed that if Rite Aid maintained heating on the first floor of the Property, the sprinkler systems on second and third floor were protected against freezing.[11]

On March 4, 2009 at 1:18 a.m. a sprinkler discharged on the third floor of the Property ("First Loss").  The sprinkler continued to discharge until 9:00 a.m, causing significant damage to the Property.[12]

Plaintiff promptly notified Hartford of the loss and filed a claim with defendant for benefits under the Policy as a result of the loss caused by the leaking sprinkler.[13]  The precise date plaintiff filed a claim for benefits for the First Loss is not readily apparent in the record.

---

[10]    Plaintiff's Undisputed Facts, ¶ 7; Plaintiff's Exhibit 9, Diemer N.T. 45-46.

[11]    Plaintiff's Undisputed Facts, ¶¶ 9 and 13; see Plaintiff's Exhibit 9, Diemer N.T. 45.

[12]    Plaintiff's Undisputed Facts, ¶¶ 2, 3 and 16.

[13]    Defendant's Undisputed Facts, ¶ 3; Plaintiff's Undisputed Facts, ¶ 14.

On March 11, 2009 defendant dispatched Mr. Stephen J. Broderick, defendant's claims adjuster, to the Property to investigate plaintiff's claim for benefits.  Defendant also hired Plick and Associates, a forensic engineering firm, to inspect the Property and investigate the cause of the sprinkler leak.[14]

Prior to the completion of Plick and Associates's report on the Property, two of defendant's employees exchanged an email on April 23, 2009 which indicated that defendant had determined that it would deny plaintiff's claim for benefits.  On November 19, 2009 defendant formally denied plaintiff's claim by letter.[15]

On July 7, 2009 the Property flooded again ("Second Loss").  This flooding occurred following repairs that were made to the Property as a result of the First Loss.  Specifically, while the sprinkler system was being repaired, the City of Allentown shut off the Property's water system.  However, during the course of the repairs, pipes were damaged or stolen from the Property.[16]

Upon completion of the repairs, the City of Allentown turned the Property's water back on.  Because the Property's

---

[14]    Plaintiff's Exhibit 2; Plaintiff's Exhibit 4, Notes of Testimony of the June 14, 2012 Deposition of Stephen J. Broderick at page 13; and Plaintiff's Undisputed Facts, ¶ 17).

[15]    Plaintiff's Exhibit 2; Defense Exhibit B.

[16]    Plaintiff's Undisputed Facts, ¶ 24; Plaintiff's Exhibit 8, Notes of Testimony of the May 2, 2012 Deposition of Laura Hart ("Hart N.T.") at pages 98-100.

piping had been damaged or stolen, turning on the water resulted in water infiltrating the building.[17]

In addition to the water damage caused by the water supply being turned back on in the Property, a gasket also burst on the second floor of the Property, which caused additional flooding.[18]

Plaintiff submitted a claim for insurance benefits for the losses caused by the July 7, 2009 flooding.  Defendant denied plaintiff's claim by letter dated September 1, 2019.[19]

<u>CONTENTIONS</u>

<u>Defendant's Contentions</u>

Defendant contends that the vacancy provision in the Policy precludes plaintiff from recovering insurance benefits for either the losses caused by the March 4, 2009 sprinkler leak or subsequent flooding on July 7, 2009.[20]  Specifically defendant contends that the Property was vacant as defined by the Policy because Rite Aid only occupied approximately 15% of the Property.

Additionally, defendant asserts that plaintiff did not protect the sprinkler system against freezing as required by the

---

[17]     Plaintiff's Undisputed Facts, ¶ 24; Hart N.T. 98-100.

[18]     Plaintiff's Exhibit 7, Notes of Testimony of the March 1, 2012 Deposition of Gerald J. Fillman, Jr. at pages 91-92.

[19]     Defendant's Undisputed Facts, ¶¶ 38-39; Defense Exhibit D.

[20]     As noted above, plaintiff has withdrawn all claims related to the Second Loss on July 7, 2009.

Policy to recover for loss caused by the damage resulting from the sprinkler leakage.  Specifically, defendant contends that the City of Allentown has adopted as ordinances the International Fire Code and the International Building Code, which incorporate the National Fire Protection Association ("NFPA") Code.  NFPA Code 25 requires that the interior of buildings with a wet-sprinkler system be heated to a minimum of 40 degrees Fahrenheit, or that other precautions be taken to protect the sprinkler system from freezing.[21]

Defendant contends that plaintiff did not maintain the temperature of the second or third floors of the Property at 40 degrees.  Moreover, defendant contends that plaintiff did not inspect the Property prior to the winter of 2009.

Accordingly, defendant contends that it is entitled to judgment on plaintiff's claims for declaratory relief and breach of contract.

Concerning plaintiff's bad faith claim, defendant contends that plaintiff has failed to provide sufficient evidence to support its bad faith claim because defendant had a reasonable basis to deny coverage.  Specifically, defendant contends that because the Property was vacant, and because plaintiff did not protect the sprinkler system from freezing, plaintiff's claim was not covered by the Policy.

---

[21]     See Defendant's Undisputed Facts, ¶ 25.

<u>Plaintiff's Contentions</u>

Plaintiff contends that the Property was not vacant as defined by the Policy because the Property was "[u]sed by the building owner to conduct customary operations."  Specifically, plaintiff contends that its customary operations were leasing and renting commercial properties.  Accordingly, plaintiff contends that because it continued to rent the Property, and attempted to rent the vacant floors, the Property was being used for plaintiff's customary operations.

In addition, plaintiff contends that it uses the second floor for the purposes of storing very expensive garment equipment.  Plaintiff contends that it is storing the equipment for the specific purpose of renting the second floor to someone in the garment business.  Therefore, plaintiff contends that the Property was being used for plaintiff's customary operations, and, therefore, was not vacant.

Plaintiff also argues that the insurance policy issued to plaintiff by defendant is replete with definitions, but contains no definition of "conduct[ing] its customary operations".  This creates ambiguity, and any ambiguity in the Policy must be construed against the insurance company which drafted the Policy.  Plaintiff also argues that policy coverage must be construed broadly and exceptions to coverage must be narrowly construed.

Therefore, plaintiff contends that even though tenants did not occupy more than 31% of the Property, the Property was not vacant under the terms of the Policy.

Additionally, plaintiff contends that even if the Property were vacant, it had "protected the [sprinkler] system against freezing". Just as the Policy does not define "customary operations", it does not define "protected". Accordingly, plaintiff contends that insurance coverage should be construed broadly and therefore the First Loss was covered under the Policy.

Concerning its bad faith claim, plaintiff contends that it has produced sufficient evidence of defendant's bad faith because defendant determined that it would deny plaintiff's claim for benefits prior to completing its investigation. Additionally, plaintiff contends that defendant's investigation of the claim was flawed because defendant did not contact Rite Aid to investigate the heat in the building and because defendant's investigator did not retain possession of the sprinkler head that leaked, thereby precluding plaintiff from examining it. Therefore, plaintiff contends that defendant should be precluded from offering any evidence that the sprinkler head froze.

<u>DISCUSSION</u>

<u>Breach of Contract</u>
<u>and</u>
<u>Declaratory Judgment</u>

In Count I plaintiff seeks a declaration that it is entitled to coverage under the Policy for the losses it sustained at the Property.  In Count II plaintiff asserts a claim for breach of contract.

The parties agree that Pennsylvania law governs the within dispute.  In Pennsylvania, interpretation of an insurance policy is a question of law which must be resolved by the courts. <u>Hunyady v. Aetna Life & Casualty</u>, 396 Pa.Super. 476, 479, 578 A.2d 1312,1313 (1990).

When interpreting an insurance policy, the court must attempt to effectuate the intent of the parties as manifested by the language of the policy.  <u>Nationwide Mutual Insurance Company v. Cosenza</u>, 258 F.3d 197, 206 (3d Cir. 2001).  Therefore, when the language of the policy is clear, a court is required to give effect to that language.  <u>Id.</u>

However, where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.  <u>Madison Construction Company v. The Harleysville Mutual Insurance Company</u>, 557 Pa. 595, 606 735 A.2d 100, 106 (1999).  Contractual language is ambiguous if it is "reasonably susceptible of

different constructions and capable of being understood in more than one sense." Id.

The burden to establish coverage under a policy rests with the insured.  However, the insurer bears the burden of establishing the applicability of an exclusion in an insurance contract.  Nationwide Mutual Insurance Company, 258 F.3d at 206.  Additionally, "exclusions are always strictly construed against the insurer and in favor of the insured." Id. at 206-207.

If the court determines that an exclusion applies under an insurance policy, the insured has the burden to show that an exception to an exclusion applies.  Northern Insurance Company of New York v. Aardvark Associates, Inc. 942 F.2d 189, 195 (3d Cir. 1991).

Here, defendant contends that coverage is excluded because the Property was vacant as defined by the Policy.  There is no dispute that at the time of the First Loss, and 60 consecutive days prior to the first incident, that plaintiff leased approximately 15% of the Property's space to Rite Aid.

Under the Policy, a property is vacant unless at least 31% of its square footage is rented or used by the building owner to conduct customary operations.

Plaintiff contends that because it was attempting to rent the entire Property, it was being used for its customary operations.  However, while plaintiff's customary operations may

-15-

be leasing buildings, plaintiff did not conduct its customary operations at the Property or even operate a leasing office out of the Property.  Merely showing the Property to prospective tenants is not sufficient to establish that it was used for plaintiff's customary operations.  Saiz v. Brighton Santa-Fe Inc., 2007 U.S.Dist. LEXIS 67767 at *19 (D.Colo. Sep. 12, 2007).

Therefore, because less than 31% of the Property was rented and because plaintiff did not use the Property for its customary operations, the Property was unambiguously vacant as defined by the Policy.  See Hollis v. Travelers Indemnity Company of Connecticut, 2010 U.S.Dist. LEXIS 26395 at *26 (W.D.Tenn. Mar. 19, 2010).

However, although the Property was vacant, the Policy does not automatically exclude all coverage.  Rather, the exclusion contains an exception that bars coverage for sprinkler leakage "unless [plaintiff] had protected the system against freezing".  The Policy does not define "protected" or otherwise specify what steps were required of plaintiff to prevent freezing.

In addition, when a property is vacant, the Policy excludes all coverage, without exception, for losses caused by vandalism, water damage, theft and attempted theft.

Here, it is undisputed that the First Loss involved sprinkler leakage.  Instead, plaintiff and defendant dispute the

-16-

precise cause of the March 4, 2009 sprinkler leak.[22]  However, under the terms of the Policy, the cause of the sprinkler leakage is not necessarily material to whether the exclusion applies.

Rather, the Policy covers sprinkler leakage, so long as plaintiff protected the system against freezing.  Therefore, whether the sprinkler leaked because it froze, or for some other reason, is not necessarily material.[23]  The material issue pertaining to coverage is whether plaintiff "protected" the system against freezing.

Here, plaintiff acknowledges that it did not independently provide heating to the second and third floors of the Property.  However, Rite Aid, the first floor tenant, provided heat, which appears to have at least supplied some heat to the second and third floors of the Property.

Michael J. Zazula, an engineer at Plick and Associates, authored an Engineering Report in which he concluded that the second and third floor water pipes were not protected from

---

[22]   Defendant contends that the sprinkler head froze because plaintiff did not provide heating to the second and third floors of the Property.

Plaintiff asserts that it "is unlikely that the sprinkler head froze".  However, plaintiff contends that if the sprinkler head did freeze, it was caused because a third-floor window near the sprinkler head left open, and not because plaintiff did not provide sufficient heat to the third floor. (Brief of Plaintiff in Opposition to the Motion of the Defendant for Summary Judgment and in Support of its Motion for Partial Summary Judgment, page 19

[23]   See Saiz v.Brighton Santa-Fe Inc., 2007 U.S.Dist. LEXIS 67767 at*19 (D.Colo. Sep. 12, 2007), in which a court analyzing an identical exclusion provision stated "by the plain language of the Policy, sprinkler leakage will be covered if the insured has protected the system against freezing.  The cause of leakage is not relevant, and the coverage will lie even if the leakage was caused by freezing."

freezing by the heat supplied from the first floor.  Mr. Zazula opined that the sprinkler leaked because the system froze and because plaintiff failed to take any steps to protect the system from freezing.[24]

In contrast, Gary Sheesley, an engineer at Consulting Engineers and Scientists, Inc. authored a Report of Examination, in which he concluded that the March 4, 2009 sprinkler leak was not caused as a result of freezing.  Instead, Mr. Sheesley concluded that heat provided from the first floor, through exposed heating ducts, was sufficient to maintain interior

---

[24]      See Defense Exhibit Q.

Plaintiff contends that the Engineering Report by Michael J. Zazula, attached as Defense Exhibit Q, should be stricken because defendant did not preserve the sprinkler head, thereby precluding plaintiff from examining it.  Accordingly, plaintiff contends that striking the report is an appropriate remedy based on the doctrine of spoliation.

On March 11, 2009, Mr. Zazula inspected the sprinkler head, which was in possession of a Rite Aid employee.  Mr. Zazula did not retain the sprinkler head and it apparently was subsequently lost.

However, the sprinkler head did not belong to defendant or Mr. Zazula.  Therefore, defendant did not have an obligation to retain the sprinkler head as evidence.  Therefore, I conclude the loss of the sprinkler head was not the fault of defendant.

Additionally, while the cause of the March 4, 2009 sprinkler leak is perhaps relevant as to whether plaintiff protected the system against freezing, determination of the cause of the leak would not necessarily answer the pertinent question as to whether plaintiff protected the system against freezing.  Therefore, any prejudice to plaintiff caused by its inability to inspect the sprinkler head is minimal.  Because defendant was not at fault for the loss of the sprinkler head and because plaintiff's case does not depend on it, evidentiary sanctions, such as striking Mr. Zazula's Engineering Report are not appropriate.  See Creazzo v. Medtronic, Inc.,  903 A.2d 24, 29 (Pa.Super. 2006).

Accordingly, I have considered Defense Exhibit Q in my adjudication of defendant's motion for summary judgment.

temperatures above 40 degrees under normal circumstances, and thereby prevent the sprinkler system from freezing.[25]

Mr. Sheesley opined that the March 4, 2009 sprinkler leak was likely caused by exposure to excessive heat, but that if freezing did cause the leak, the sprinkler froze as the result of an open window near the sprinkler head rather than interior temperature of the property generally.[26]

In addition to the competing expert reports, George M. Diemer, a partner of plaintiff 7th & Allen Equities stated that both he and a property manager, Brian Hannon, frequently visited the Property and that the second and third floors never felt insufficiently heated.[27]  Additionally, during its investigation of plaintiff's claim, defendant speculated that the heating from

---

[25]     See Plaintiff's Exhibits 10A and 10B.

In its reply brief, defendant contends that the testimony of plaintiff's expert, Gary Sheesley, is not admissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  On September 24, 2012 Defendant Hartford Casualty Insurance Company's Notice of Motion in Limine to Exclude the Expert Testimony of Gary Sheesley, P.E. was filed.

However, although the title of defendant's motion contains the words "Motion in Limine", it in substance is clearly a Daubert motion.  By Amended Trial Attachment Order entered February 29, 2012 (Document 29) I required that Daubert motions be filed 60 days in advance of trial, or in this case, by September 6, 2012.

Therefore defendant's motion was not timely filed.  Accordingly, I have considered plaintiff's report in adjudicating the within summary judgment motion.

[26]     See Plaintiff's Exhibits 10A and 10B.

[27]     Brian Hannon was the property manager for the Property between 2003 and 2008.  See Plaintiff's Exhibit 15, Notes of Testimony of the July 31, 2012 Deposition of Brian Hannon ("Hannon N.T.") at page 23.

-19-

the first floor was sufficient to heat the second and third floors.

Moreover, the sprinkler system on the second and third floors never froze prior to March 4, 2009.[28]

Here, drawing reasonable inferences in favor of plaintiff, as I am required to do under the applicable standard of review, I cannot conclude as a matter of law that plaintiff failed to protect the sprinkler system against freezing.

Genuine issues of material fact exist as to whether providing heat to the first floor of the Property protected the second and third floor heating systems from freezing.  Mr. Sheesley opined that the heat from the first floor was sufficient to protect the second and third floor sprinkler systems. Moreover, plaintiff has owned the Property since 1990 and since the early 2000's has only rented to a first floor tenant.  That no prior instances of freezing occurred in the past supports an inference that additional measures were not necessary to protect the sprinkler system against freezing.[29]

---

[28]   Plaintiff's Exhibit 2; Plaintiff's Exhibit 9, Diemer N.T. 45-46; Plaintiff's Exhibit 15, Hannon N.T. 86-87.

Defendant disputes plaintiff's assertion that the sprinkler system never froze before.  Specifically, defendant asserts that in 2004 a pipe break occurred in the Property, which plaintiff's contractors believed was caused by freezing (Defendant's Undisputed Facts; Exhibit K).

[29]   Defendant provides evidence that plaintiff was warned on two prior occasions that heat needed to be maintained on the second and third floors of the Property to protect the sprinkler system against freezing.

(Footnote 29 continued):

-20-

Moreover, the Policy does not refer to the International Fire Code and the International Building Code, which require that the interior of buildings with a wet-sprinkler system be heated to a minimum of 40 degrees Fahrenheit.  Furthermore, defendant has not established that the third floor temperature was below 40 degrees at the time of the March 4, 2009 incident.

Additionally, policy exclusions and exceptions are strictly construed against the insurer and in favor of the insured, Nationwide Mutual Insurance Company, 258 F.3d at 206-207, and here, the Policy does not specify what is required to protect the system against freezing.[30]

_____

(Continuation of footnote 29):

Specifically, on December 13, 2002, Peerless Insurance, a prior insurer of the Property, sent plaintiff a letter which indicated that the heating system on the upper floors should be activated to protect against freezing.  Additionally, in 2004 a sprinkler leak occurred in the Property.  Kistler O'Brien, a company which inspects fire-protection systems concluded that the sprinkler system must have froze (Defense Exhibit K).

However, plaintiff disputes that the 2004 leak was caused because the pipes froze.  Additionally, even assuming plaintiff was warned about the sprinkler system potentially freezing, such evidence, while perhaps relevant, would not eliminate issues of material fact as to whether plaintiff "protected" the sprinkler system against freezing.

[30]   Moreover, ambiguous provisions within an insurance policy are construed in favor of the insured and against the insurer.  Madison Construction Company, 557 Pa. at 606, 735 A.2d at 106.

Here, because the Policy does not define the term "protected" or otherwise indicate what measures are required of the insured in order to ensure coverage for sprinkler leakage in a vacant property, the term is potentially ambiguous.  See Five Star Hotels, LLC v. Insurance Company of Greater New York, 2011 U.S.Dist. LEXIS 31313 at * 7, which held that a policy provision that required the insured "maintain" an automatic sprinkler system was ambiguous.

-21-

Because factual disputes exist over the measures which plaintiff undertook to protect the system against freezing and how those efforts impacted whether the second and third floors sprinkler systems were likely to freeze, summary judgment is not appropriate with respect to the First Loss.[31]

Therefore, I deny defendant's motion for summary judgment to the extent that it contends the Policy does not provide coverage, as a matter of law, for the loss to the Property resulting from the March 4, 2012 sprinkler leakage.

## Bad Faith

Defendant also moves for summary judgment concerning plaintiff's bad faith claim.

To succeed on a claim for bad faith pursuant to 42 Pa.C.S. § 8371, a plaintiff must show that the insurer "did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. Terletsky v. Prudential Property and Casualty Insurance Company, 437 Pa.Super 108, 125, 649 A.2d 680, 688 (1994).

---

[31]     In reaching my conclusion, I find the within case distinguishable from Saiz v. Brighton Santa-Fe Inc., 2007 U.S.Dist. LEXIS 67767 (D.Colo. Sep. 12, 2007), which is cited by defendant.  In Saiz, the court considered an identical policy exclusion, which precluded coverage for sprinkler leakage unless the plaintiff protected the system against freezing.  However, in contrast to the within dispute, the insured in Saiz did not contend that it protected the system from freezing.  2007 U.S.Dist. LEXIS 67767 at * 20.

Defendant contends that it had a reasonable basis to deny plaintiff's claim and that plaintiff has failed to provide any evidence of bad faith.

However, as discussed above, plaintiff has produced sufficient evidence that defendant did not have a basis to deny plaintiff's claim for coverage pertaining to the First Loss. Moreover, plaintiff provided evidence that defendant had decided to deny plaintiffs' claim before defendant had completed its investigation of plaintiff's claim.

Therefore, drawing reasonable inferences in favor of plaintiff, as I am required to do under the applicable standard of review, I conclude the defendant has not established that it is entitled to summary judgment on plaintiff's bad faith claim.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for summary judgment is dismissed as moot in part and denied in part. It is dismissed as moot to the extent that it contends that plaintiff cannot recover for damages resulting from the July 9, 2009 second flooding because plaintiff withdrew that claim.  For the reasons expressed above in this Opinion, it is denied in all other respects.