IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES, )<br>)<br>Plaintiff, )<br>)<br>.v. )<br>)<br>HARTFORD CASUALTY INSURANCE )<br>COMPANY, )<br>)<br>Defendant. ) | NO. 5:11-01567 (JKG) |

ORDER

AND NOW, this _____ day of _____, 2012, upon consideration of Defendant's Motion for Rule 11 Sanctions, opposition thereto, and the record as a whole, it hereby is ORDERED and DECREED that the said motion is DENIED.

BY THE COURT:

_____
JAMES K. GARDNER, U.S.D.J.

{00330770;2}

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES, <br><br>    Plaintiff, <br><br> v. <br><br> HARTFORD CASUALTY INSURANCE COMPANY, <br><br>    Defendant. | NO. 5:11-01567 (JKG) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

NOW COMES plaintiff 7th & Allen Equities, by and through its undersigned counsel, Silverang & Donohoe, LLC and The Kancher Law Firm, LLC, and, on the grounds stated in the within memorandum of law (incorporated herein), hereby opposes the Motion for Rule 11 Sanctions of defendant Hartford Casualty Insurance Company.

WHEREFORE, plaintiff respectfully requests this Honorable Court deny defendant's said motion, enter an Order of the substance submitted herewith, and grant plaintiff such other relief that the Court deems appropriate under the circumstances.

Respectfully submitted,
**SILVERANG & DONOHOE, LLC**

By: /s/ Mark S. Haltzman
_____
Mark S. Haltzman, Esquire
595 East Lancaster Avenue
Suite 203
St. Davids, PA 19087
(610) 263-0115

**THE KANCHER LAW FIRM, LLC**
Mark S. Kancher, Esquire
100 Grove Street
Haddonfield, NJ 08033
(856) 795-2440

Attorneys for Plaintiff

{00330770;2}

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 7TH & ALLEN EQUITIES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:11-01567 (JKG) |
| ) | |
| HARTFORD CASUALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF LAW SUPPORTING
PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR RULE 11 SANCTIONS

I.  SUMMARY

In plaintiff's Motion *in Limine* to Bar Defendant's Expert Testimony, its authors and signers, Messrs. Kancher and Haltzman ("Signers"), are guilty of one thing only: Arguing a reasonable inference. Indeed, Signers' inference—that cause and origin *expert* Michael Zazula's every-migrating explanation of what happened to *the cornerstone* piece of evidence in this case is tantamount to misrepresentation—is no less reasonable than defendant's inference, in their R. 11 moving papers, that Signers' statements about Zazula are tantamount to an accusation of perjury.

On the foregoing basis, as elaborated upon below, this Court should deny defendant's R. 11 motion.

II.  FACTS

Signers herein incorporate Plaintiff's Motion *in Limine* to Bar the Testimony of Plick & Associates and Its Employees and to Strike the Affidavit of Michael Zazula dated September 11, 2012 (**Doc. 64**), and Defendant Hartford Casualty Insurance Company's

{00330770;2}

Motion for Rule 11 Sanctions (**Doc. 93**), as their statement of facts necessary to be known by this Court to dispose of defendant's R. 11 Motion.

### III. LAW

#### A. Scope of Rule 11

Rule 11 only applies to pleadings as a whole and motions as a whole, *not to particular contentions within* a pleading or motion:

> *Nothing* in the language of . . . Rule [11] or the Advisory Committee Notes supports the view that the Rule empowers the district court to impose sanctions on lawyers simply because *a particular argument* or ground for relief *contained in a non-frivolous motion* is found by the district court to be unjustified.

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987) (emphasis supplied; internal quotes omitted; quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1540-41 (9th Cir.1986); citing also *Brown (Neely) v. Federation of State Medical Bds.*, 830 F.2d 1429, 1440, n.2 (7th Cir.1987)).

#### B. Decisional Standard

When properly invoked, R. 11 mandates a pleading or motion be well-grounded in law and fact:

> The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, ——, 111 S. Ct. 922, 931–32, 112 L. Ed. 2d 1140 (1991), with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that *the claim was well-grounded in law and fact. Jones v. Pittsburgh National Corp.*, 899 F.2d [1350,] []1359 [(3d Cir. 1990)]. *See Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 889 F.2d 490, 496 (3d Cir.1989) ('The rule requires a reasonable inquiry into both the facts and the law supporting a particular pleading.').

*Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (emphasis supplied). *See also* R. 11(b) ("(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support").

### C. Applying Decisional Standard

When confronted with a properly invoked R. 11 motion, the Court's first inquiry is whether the subject paper patently is unmeritorious or frivolous:

> Generally, [R. 11] sanctions are prescribed 'only in the *"exceptional circumstance"* where a claim or motion is *patently* unmeritorious or frivolous.' *Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988) (citations omitted).

*Id.*

Any doubt about whether a contested paper patently offends R. 11 is resolved in favor of the signer:

> If there is doubt how the district court will rule on the challenged pleading or motion, the filing of the paper is unlikely to have violated Rule 11.

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988). *See also Susquehanna Capital Group v. Rite Aid Corp.*, C.A. No. 01-1462, 2002 WL 31528490, at *3 (E.D. Pa. Sept. 17, 2002), Fullam, J. ("[g]iving plaintiff and its counsel the benefit of the doubt, I conclude that defendant's Rule 11 motion should be denied"). *Cf. Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) ("[w]hen divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . we have instructed

{00330770;2}                                    3

district courts to resolve all doubts in favor of the signer") (internal quotes and citation omitted).

### D.  Rule 11 Elements Summarized

The foregoing may be synthesized and summarized accurately as follows:

To prevail on a R. 11 sanctions motion challenging another motion, R. 11 proponent must show:

(1) he challenges the motion as a whole rather than a part of it;

(2) the motion as a whole doubtlessly violates R. 11 because:

(a) contentions of fact stated in the motion patently lack evidentiary support, and

(b) contentions of law stated in the motion patently lack legal support, including a nonfrivolous argument for the modification of existing law.

See *Gaiardo*, 835 F.2d at 483; *Ford Motor Co.*, 930 F.2d at 289; *Mary Ann Pensiero, Inc.*, 847 F.2d at 99; *Susquehanna Capital*, 2002 WL 31528490, at *3.

## IV.   LAW APPLIED TO FACTS

### A.  Scope of Rule 11

Defendant does not contend that the subject motion offends R. 11. Motion for Rule 11 Sanctions, Supporting Memorandum of Law ("Rule 11 Memo"). Rather, defendant expressly contends that *some statements contained in* the motion offend R. 11. E.g., *id.* at 2, ¶ 3 (§ II, ¶ 1), ("a court has the authority to sanction a party for filing a motion *which contains* allegations of fact which are wholly unsupported") (emphasis supplied); 4, ¶ 1 (§ III.A, ¶ 1) ("Plaintiff's counsel has violated Rule 11 by submitting to this Court a motion in limine *which contains numerous unsupported accusations*")

(emphasis supplied); 6, penultimate ¶ (§ III.A, last ¶) ("the outrageous assertions of perjury and professional misconduct *contained within* Plaintiff's motion in limine are without evidentiary support") (emphasis supplied); 6, last ¶ (§ III.B, ¶ 1 ("[p]laintiff's counsel has violated Rule 11 because he signed and submitted to this Court a motion *which contains* factual contentions that have no evidentiary support") (emphasis supplied); 8, ¶ 2 (§ III.B, last ¶) ("[p]laintiff's counsel violated Rule 11 by signing and filing Plaintiff's Motion in Limine . . . *when this motion contained* unsupported factual contentions") (emphasis supplied).

Conversely, conspicuously absent from defendant's Rule 11 Memo is any argument whatever going to the Motion as whole. For example, defendant does not argue that, under the facts stated in plaintiff's subject Motion *in Limine*:

- defendant patently cannot be sanctioned for spoliation of evidence, or
- defendant's cause and origin expert clearly was not the last person of record to possess and control the vanishing sprinkler head, or
- defendant's said expert plainly was so new to his calling that he did not understand he had a duty to secure the sprinkler head, or
- defendant's said expert reasonably believed Rite Aid owned the subject building and therefore was the proper steward of the most critical piece of evidence in the case.

Indeed, it is *not doubtful* that defendant contends, *exclusively*, that plaintiff, in its said Motion *in Limine*, (1) maligned its expert witness by inferring his incredibility based on his ever-migrating explanation of what happened to the vanishing sprinkler head, and

(2) offended defense counsel by expressly posing the rhetorical question whether counsel had a basis to recognize Expert Zazula was incredible.[1] Rule 11 Memo.

As a matter of law, such a contention is not cognizable pursuant to R. 11. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).

On this basis alone, the Court should deny defendant's Motion for Rule 11 Sanctions.

B.  **Basis in Fact and Law**

1.  **Propriety of the Subject Motion *in Limine***

Given the fatally narrow scope of defendant's Rule 11 Memo as expressed by defendant itself, it is unclear to what extent plaintiff must pretend defendant argues that plaintiff's subject Motion *in Limine* as a whole offends Rule 11. In an abundance of caution, plaintiff herein incorporates that Motion *in Limine* (**Doc. 64**) as its argument that its said Motion does not offend Rule 11. *See also McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 921-22 (3d Cir. 1985):

> It has always been understood—the inference indeed is one of the simplest in human experience—that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred that fact itself of the cause's lack of truth and merit.

On this basis alone, the Court should deny defendant's Motion for Rule 11 Sanctions.

---

[1] On October 30, 2012, Signers notified defendant's counsel that Signers would withdraw any suggestion in plaintiff's said Motion *in Limine* that defendant's counsel had done anything improper. *See* **Exhibit D** hereto (the said email) (incorporated herein). Defendant filed its Rule 11 Motion for Sanctions before plaintiff could file said withdrawal.

2. **Inferring Zazula Incredibility**

In support of their argument that Signers cannot reasonably have inferred Zazula's incredibility, defendant invokes one authority from far beyond the Eastern District of Pennsylvania and, for that matter, the Third Circuit: *Kemp v. Pfizer, Inc.*, 152 F.R.D. 556 (E.D. Mich. 1993). Rule 11 Memo, 7, ¶ 2 (§ III.B, ¶ 2).

*Kemp* is inapposite. In that case, in a Motion for Default Judgment pursuant to local rule, counsel characterized the following as perjurious:

- Affidavits from an in-house lawyer and his paralegal in which each attested that a certain memorandum claimed privileged, prepared by the paralegal and copied to the lawyer, included the lawyer's mental impressions though, in fact, the memorandum revealed no mental impressions of the lawyer, *id.* at 559;

- A response to a request for admissions about whether a certain of defendant's medical devices ever fractured and caused a patient's death, which response read fracture admitted but cause of death unknown, and a letter by counsel repeating the same, *id.* at 560;

- An affidavit supporting summary judgment from outside counsel in which he attested that certain medical records were available to defendant as well as plaintiff as of a certain date though, in fact, defendant had retained a non-testifying expert who examined those records and concluded the subject patient may have died owing to defendant's medical device fracturing, which non-testifying expert's conclusion was not available to plaintiff, *id.*

- A response of "I don't know" by one of defendant's Vice Presidents to a deposition question about whether handwriting analysis ever had been performed on certain of defendant's records though, in fact, two years earlier, the witness had been carbon-copied on correspondence discussing such an analysis, *id.* at 560-61.

On the aforesaid record, the Court found that plaintiff failed to establish that any of the persons it accused of perjury had committed perjury. *Id.* at 561.

*Kemp* is inapposite because, in that case, counsel characterized concrete statements of various writers as being at odds with facts of record. In this case, there is nothing concrete about Zazula's ever-migrating explanation of the disposition of the subject sprinkler head. Moreover, in this case, there are no facts of record with which to compare Zazula's explanation, so it is the character of Zazula's explanation itself that founds Signers' conclusion of fabrication.

Additionally, in *Kemp*, counsel expressly labeled the subject writers as perjurious. In this case, Signers do not use that moniker (though defendant makes that leap in its Rule 11 Memo).

Instead, in this case, Signers' conclusion strictly is inferred. Judges and juries routinely infer witness incredibility. *See, e.g., Allstate Ins. Co. v. American Rehab and Physical Therapy, Inc.*, 330 F. Supp. 2d 506, 509 (E.D. Pa. 2004) ("[t]aking the evidence presented at trial and all reasonable inferences therefrom in the light most favorable to the Plaintiffs, we find that there was sufficient evidence for a reasonable jury to hold the individual defendants liable for intentional misrepresentation"); *Parker v. Philadelphia Newspapers, Inc.*, 322 F. Supp. 2d 624, 633 (E.D. Pa. 2004) ("an inference may be drawn

that the proffered reason for terminating plaintiff was fabricated"); *Mendez v. Pilgrim's Pride Corp.*, C.A. No. 04-01095, 2005 WL 2175180, at *13 (E.D. Pa. Aug. 25, 2005), Gardner, J. ("the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action") (internal quotes and citation omitted); *Lloyd v. City of Bethlehem*, C.A. No. 02-0830, 2004 WL 540452, at *11 (E.D. Pa. Mar. 3, 2004), Gardner, J. ("[t]he reasonable inference in favor of plaintiff is that defendants were attempting to fabricate a reason to terminate him as a pretext to retaliate for his comments to the press").

In this case, plaintiff drew an inference that Zazula fabricated his subject affidavit because his explanation about the disposition of the sprinkler head he possessed and controlled on March 5, 2009 migrated from his initial report, in September 2009, through his supplemental report, in July 2012, through his affidavit, in August 2012, for the reasons stated in plaintiff's subject Motion *in Limine* (**Doc. 64**).

Thus, in his September 22, 2009 Report, Zazula exclusively states as follows about the disposition of the sprinkler head:

> The subject activated sprinkler [head] was replaced prior to my inspection. *The subject sprinker [head] was retained and presented to me by Rite-Aid employees.* The sprinkler [head] is a Viking, Viking Corporation, 210 N. Industrial Park Drive, Hastings, Michigan 49058, SSP 165° F. pendant-type sprinkler [head]. The sprinkler [head] did not appear to have any observable damage, indicating an outside force, such as something striking the outside of the sprinkler [head], activated the sprinkler [head] (Photos 1 & 2).

**Exhibit A** hereto (Sept. 22, 2009 Plick & Associates Report (author: M.J. Zazula)) (incorporated herein), 1, ¶ 3 (emphasis supplied).

Thus, in September 2009, Zazula states that unnamed Rite Aid employee*s* (plural) presented him with the sprinkler head, and states, or at least implies, that he was the last person to possess the sprinkler head. Conspicuously absent from the September 2009 Report is any plain statement about whether Zazula performed his "inspection" of the sprinkler head in Rite Aid's store, or took the sprinkler head to his laboratory, or sent it to the manufacturer for evaluation.

Nearly three years later, in an expanded July 24, 2012 Report—post-dating defendant's July 20, 2012 expert report deadline[2]—Zazula exclusively states as follows about the disposition of the sprinkler head:

> The subject sprinkler [head] was replaced prior to my March 11, 2009 inspection by Simplex Grinnell, 6330 Hedgewood Drive, Allentown, PA 18106. Rite-Aid employees retained the subject sprinkler [head]. *The Rite-Aid employees* presented the subject sprinkler [head] to me during my inspection and *stated they were to retain it at the conclusion of my inspection.*

**Exhibit B** hereto (July 24, 2012 Plick & Associates Report (authors: M.J. Zazula and M.X. Plick)) (incorporated herein), 3, ¶ 2 (emphasis supplied).

Thus, in July 2012, Zazula explains that unnamed Rite-Aid employee*s* (plural) state that they were to retain the sprinkler head at the conclusion of Zazula's inspection. But that vague, passing statement does not contradict Zazula's September 2009 statement, or reasonable implication, that Zazula was the last person to possess the sprinkler head. In any event, in July 2012, Zazula's explanation about the disposition of the sprinkler head migrates from his statement, or implication, that he was the last person

---

2  Doc. 37 (Order), 1 n.2, ¶ 3.

{00330770;2}                                           10

to possess it to, at best, an implication that, following his inspection, he was supposed to return the sprinkler head to Rite Aid. Conspicuously absent from the July 2012 Report is any plain statement about whether Zazula performed his "inspection" of the sprinkler head in Rite Aid's store, or took the sprinkler head to his laboratory, or sent it to the manufacturer for evaluation, after any or all of which he presumably would have returned it to one or more of Rite Aid's employees, given their statement they were to retain it following Zazula's "inspection" of it.

A month later, on August 30, 2012—post-dating the April 9, 2012 fact discovery deadline by four and-a-half months[3] and depriving plaintiff of a pretrial opportunity to cross-examine Zazula—Zazula exclusively states as follows about the disposition of the sprinkler head:

> On March 11, 2009, I inspected the subject sprinkler head at the insured building located at 602-618 North 7th Street, Allentown, PA (the 'subject building').
>
> Employee(s) of Rite-Aid were present at the subject building at the time of my March 22, 2009 inspection and the Rite-Aid employee(s) made available the subject sprinkler head for inspection.
>
> The Rite-Aid employee(s) specifically stated they were instructed to retain the subject sprinkler head at the conclusion of my inspection.
>
> I performed the March 11, 2009 inspection on site at the subject building and in the presence of Rite-Aid employee(s) that had possession of the subject sprinkler head.
>
> At no time was the subject sprinkler head ever received by me, retained by me or in my custody or possession.

---

[3] Doc. 21 (Order), 1, ¶ 2.

> At the conclusion of my inspection, I specifically asked the Rite-Aid employee(s) if I could take possession of the subject sprinkler head as evidence.
>
> The Rite Aid employee(s) refused to allow me to take possession of the subject sprinkler head. The Rite-Aid employee(s) stated he was informed to not release the sprinkler head and that employee(s) would maintain possession of the sprinkler [head].
>
> After I was denied the ability to take possession of the sprinkler head, I repeatedly advised/informed the Rite-Aid employee(s) of the importance to retain the subject sprinkler head as it was clearly a significant evidentiary component in determining the causation of the subject loss.

**Exhibit B** (Aug. 30, 2012 Zazula Affidavit), 1-2.

Thus, in August 2012, Zazlula no longer recalls a fundamental fact: Whether he interacted with more than one Rite Aid employee on the day he apparently inspected the sprinkler head on a Rite Aid counter (though he was unequivocal about having interacted with employee*s* (plural) in his 2009 Report and his supplemental 2012 Report).

On the other hand, three and-a-half years after the (Mar. 2009) fact, Zazula apparently recalls with great specificity his exchanges with *one or* more Rite Aid employee*(s)* (singular or plural) about whom shall possess the "clearly . . . significant evidentiary component," concluding, albeit hardly in plain language,[4] that Rite Aid kept the sprinkler head following Zazula's retail drug store countertop "inspection" of it.

Zazula's explanation about disposition of the significant evidentiary component patently migrates materially. Therefrom, Signers—duty bound to represent their client zealously—infer Zazula's incredibility and so state in plaintiff's Motion *in Limine* to preclude Plick & Associates' testimony. *See Allstate Ins. Co.*, 330 F. Supp. 2d at 509;

---

[4] *See also id.* at ¶ 7 (Zazula never received, retained, took custody of, or had possession of the sprinkler head), bearing this question: If Zazula inspected the sprinkler head from afar, how far from it was he during his inspection?

{00330770;2}                                        12

*Parker*, 322 F. Supp. 2d at 633; *Mendez*, 2005 WL 2175180, at *13; *Lloyd*, 2004 WL 540452, at *11.

For that matter, Signers posit they would have been ineffective as a matter of law if, on this record, they did not infer Zazula's incredibility.

On this basis alone, the Court should deny defendant's Motion for Rule 11 Sanctions.

At the very least, on the foregoing bases collectively, the Court should deny defendant's Motion for Rule 11 Sanctions.

### V. CONCLUSION

Therefore, plaintiff respectfully requests this Honorable Court deny defendant's said motion, enter an Order of the substance submitted herewith, and grant plaintiff such other relief that the Court deems appropriate under the circumstances.

Respectfully submitted,

SILVERANG & DONOHOE, LLC

By: /s/ Mark S. Haltzman
_____
Mark S. Haltzman, Esquire
595 East Lancaster Avenue
Suite 203
St. Davids, PA  19087
(610) 263-0115

**THE KANCHER LAW FIRM, LLC**
Mark S. Kancher, Esquire
100 Grove Street
Haddonfield, NJ  08033
(856) 795-2440

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify I caused a true and complete copy of the within *Plaintiff's Opposition to Defendant's Motion for Rule 11 Sanctions* to be served upon those listed below pursuant to Fed. R. Civ. P. 5(b)(3) and U.S.D.C. E.D. Pa. L.R. 5.1.2.8 by filing same with the above-captioned Court via its Electronic Case Filing system, where a copy of same is available for viewing and downloading, on November 15, 2012:

Thomas Coleman, Esquire
Richard D. Gable Jr., Esquire
BUTLER PAPPAS
WEIHMULLER
KATZ CRAIG, LLP
1818 Market Street
Suite 2740
Philadelphia, PA 19103

O. Daniel Ansa, Esquire
Michael J. O'Neill, Esquire
ANSA ASSUNCAO, LLP
1600 JFK Boulevard
Suite 900
Philadelphia, PA 19103

/s/ Stephen E. Skovron
_____
Stephen E. Skovron, Esquire

{00330770;2}